110 F.3d 65
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Lee BRICKNER, Defendant-Appellant.
 No. 96-3783.
 United States Court of Appeals, Sixth Circuit.
 April 3, 1997.
 
 Before: LIVELY, NELSON, and MOORE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Robert Lee Brickner, a federally-licensed gun dealer in Hamilton, Ohio, pleaded guilty to having violated 18 U.S.C. § 922(b)(3) by selling two firearms to a person who did not reside in the state where the licensee's place of business was located. Sentenced to imprisonment for a year and a day, Mr. Brickner contends on appeal that the district court misapplied the United States Sentencing Guidelines.
 
 
 2
 The question is whether the district court erred in its calculation of the number of firearms involved in the offense. Pursuant to U.S.S.G. § 2K2.1(b)(1)(C), the district court added three levels to Mr. Brickner's base offense level in the belief that nine firearms were involved. It seems to us that under the plain language of the guidelines, six of these weapons should not have been counted. Because there would have been only a one-level increase under § 2K2.1(b)(1) if the number of firearms had been calculated correctly, we shall vacate the sentence and remand the case for resentencing.
 
 
 3
 * In January of 1993, acting on information that Mr. Brickner had been selling firearms to non-residents through strawmen resident in Ohio, the Bureau of Alcohol, Tobacco, and Firearms sent two undercover agents to Mr. Brickner's store. One of the agents, a resident of Indiana, expressed an interest in buying certain weapons. On learning that the man was not an Ohio resident, Mr. Brickner told him that the sale would be prohibited under federal law. Mr. Brickner went on to suggest, however, that the prospective customer have an Ohio resident buy the guns for him.
 
 
 4
 The Indiana agent then asked his companion, who lived in Ohio, to complete the sale. The upshot was that the Ohio agent walked out of the store with a Ruger handgun for which Mr. Brickner received $272. The agent also ordered two Sig Sauer semiautomatic pistols, for which Mr. Brickner accepted a $120 deposit.
 
 
 5
 In subsequent telephone conversations with Mr. Brickner, the Indiana agent arranged for a pickup of the two Sig Sauer pistols and discussed the availability and price of six more Sig Sauers. A different Ohio agent, accompanied by the Indiana agent, took delivery of the two Sig Sauers on February 25, 1993, and gave Mr. Brickner an order for the additional pistols that had been discussed over the telephone.
 
 
 6
 A few days later the same two agents, equipped with a hidden electronic transmitter, went to Mr. Brickner's place of business for the ostensible purpose of getting the additional Sig Sauers. When Mr. Brickner said that the guns were in the store, other agents executed a search warrant and seized the six weapons.
 
 
 7
 Mr. Brickner was charged with, and pleaded guilty to, selling the two Sig Sauers that had been picked up on February 25. The probation officer who prepared Mr. Brickner's presentence investigation report recommended that a total of nine weapons be counted for offense level purposes, however. The district court accepted this recommendation over Mr. Brickner's objection.
 
 II
 
 8
 "Unless otherwise specified," the section of the Guidelines Manual dealing with relevant conduct provides, the specific offense characteristics set forth in Chapter 2 of the manual are to be determined on a basis that attributes to the defendant not only acts that occurred during the commission of the offense of conviction, but (with respect to offenses of the type at issue here) any acts committed by the defendant as "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. §§ 1B1.3(a)(1) and (2).
 
 
 9
 Insofar as prohibited transactions involving firearms are concerned, U.S.S.G. § 2K2.1(b)(1) provides for graduated increases in the offense level if three or more firearms were involved. A one-level increase is prescribed if the number of firearms was three or four, see subsection (b)(1)(A), and a three-level increase is prescribed if the number of firearms was eight to twelve. See subsection (b)(1)(C).
 
 
 10
 In the Commentary accompanying U.S.S.G. § 2K2.1, the Sentencing Commission has imposed an express limitation on the number of firearms to be counted under § 2K2.1(b)(1). See Application Note 9, which provides as follows:
 
 
 11
 "For purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer." (Emphasis supplied.)
 
 
 12
 Application Note 9 clearly does not prohibit the counting of the Ruger handgun that Mr. Brickner sold to the undercover agent in January of 1993. The Ruger transaction was part of the same course of conduct as the transaction involving the two Sig Sauers obtained from Mr. Brickner in February. The Ruger was "unlawfully distributed," within the meaning of that term as used in Application Note 9, and the district court did not err in counting it.
 
 
 13
 The six Sig Sauers ordered by the undercover agent on February 25, however, were seized before Mr. Brickner "distributed" them to the agent. It was not unlawful for Mr. Brickner to seek to obtain the weapons from his supplier, and it was not unlawful for Mr. Brickner to possess them. Application Note 9 instructs the courts to count "only" firearms (1) sought to be obtained unlawfully, or (2) possessed unlawfully, or (3) distributed unlawfully--and the six Sig Sauers did not come within any of these three categories as far as Mr. Brickner was concerned. If Application Note 9 means what it says, and if the note has binding effect, the six guns ought not to have been counted.
 
 
 14
 Stinson v. United States, 508 U.S. 36, 38 (1993), teaches that "Commentary" interpreting or explaining a guideline is binding on the federal courts "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Application Note 9 does not violate the Constitution or a federal statute, and it is not inconsistent with U.S.S.G. § 2K2.1. Neither is the application note inconsistent with U.S.S.G. § 1B1.3. The latter section, as we have seen, begins with the words "[u]nless otherwise specified...." Even if §§ 1B1.3 and 2K2.1, standing alone, would specify that the six Sig Sauers be counted--a question we need not decide here--Application Note 9 specifies otherwise. The government has offered no intelligible reason why Application Note 9 should not be applied in accordance with its terms, and we know of no such reason.
 
 
 15
 The sentence is VACATED, and the case is REMANDED for resentencing.