[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14010
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 11, 2012
JOHN LEY
CLERK

D.C. Docket No. 5:11-cr-00018-RS-LB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD SAMUEL CRUDGINGTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 11, 2012)

Before BARKETT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Richard Samuel Crudgington was sentenced to thirty-months imprisonment after pleading guilty to one count of dealing in firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D), and two counts of unlawfully selling a firearm to a convicted felon, in violation of 18 U.S.C. §§ 922(a)(2) and 922(d)(1). In the factual statement provided in support of his plea, Crudgington admitted that he was advertising firearms for sale in local papers; that the government had seized 147 firearms from his residence, nearly all of which were located in gun racks with price tags attached to them; that he was obtaining firearms from licensed dealers in other states and having them shipped to a local dealer, who then transferred them to him; that there were twenty-two firearms which he was still supposed to pick up from one local dealer; that he had sold seven firearms to undercover government agents, including to agents he believed to be convicted felons; and that these transactions had occurred at his residence.

On appeal, Crudgington claims that the district court contravened Application Note 5 to § 2K2.1(b)(1) of the Sentencing Guidelines when the court calculated his offense level by counting the 100-plus firearms seized from his residence. This Note states that when "calculating the number of firearms under [§ 2K2.1(b)(1)], count only those firearms that were unlawfully sought to be

2

obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer." U.S.S.G. § 2K2.1 cmt. n.5 Crudgington argues that because he did not "unlawfully" possess the 100-plus firearms and because it was never alleged that he either unlawfully sought to obtain them or unlawfully distributed those particular firearms, the district court could not properly count them for sentencing purposes. Crudgington further notes that had the 100-plus firearms not been counted, his offense level would have dropped six levels.[1] Upon review of the record and consideration of the parties' briefs, we affirm his sentence.

We accept the district court's factual findings at sentencing unless clearly erroneous, and we review the application of the Sentencing Guidelines to the facts de novo. United States v. Caraballo, 595 F.3d 1214, 1230 (11th Cir. 2010). We also review de novo the district court's legal interpretation of the Sentencing Guidelines. United States v. Fulford, 662 F.3d 1174, 1177 (11th Cir. 2011). To properly interpret the Guidelines, the language of the Guidelines must be given its plain and ordinary meaning. Id. In addition, the Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute, or is

---

[1] Section 2K2.1(b)(1) provides that if the offense involves between three and seven firearms, a court should add two levels to the base offense level, but if the offense involves 100–199 firearms, the court should add eight levels. § 2K2.1(b)(1)(A), (D).

3

inconsistent with, or a plainly erroneous reading of, that guideline." Id. (quotation marks omitted).

As an initial matter, we dismiss the government's suggestion that Crudgington failed to preserve the argument he advances on appeal. We hold that the objection was preserved as a part of Crudgington's claim that the additional firearms should not have been counted based on the plain language of the Guidelines.

However, Crudgington's argument fails on the merits. We do not dispute Crudgington's contention that the plain language of Application Note 5 exhaustively specifies the firearms that may be counted for purposes of § 2K2.1(b)(1). But his argument for relief hinges further on the premise that, while he may have been actively trying to resell the 100-plus firearms as an unlawful firearms dealer, he did not "unlawfully" possess them. We cannot accept this premise.

Crudgington pleaded guilty to "knowingly engag[ing] in business as a dealer in firearms without being licensed to do so," in violation of 18 U.S.C. § 921(a)(1)(A). In effect, Crudgington admitted he was not simply selling an occasional firearm "for the enhancement of a personal collection or for a hobby," but rather that he was unlawfully "dealing in firearms as a regular course of trade

or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(21)(C) (defining what it means for a firearms dealer to be "engaged in the business"). Here, Crudgington makes no claim that the 100-plus firearms were separate from the illegal firearms business he was operating. Indeed, nearly all of the firearms in question were directly linked to this illegal business, as evidenced by the fact that they had price tags and some had already been advertised for sale in local papers. Thus, unlike the federally-licensed firearms dealer in United States v. Brickner, No. 96-3783, 1997 WL 159331 (6th Cir. April 3, 1997), Crudgington cannot plausibly assert that the firearms yet to be sold illegally were being used in a purely lawful manner. Rather, as the essential component of his illicit firearms business, it is clear that the firearms in question were being used by Crudgington unlawfully under 18 U.S.C. § 922(a)(1)(A). For this reason, we hold that the district court acted consistently with the commentary to § 2K2.1(b)(1) when it counted the firearms seized from Crudgington's residence in calculating his sentence.

**AFFIRMED.**