## STINSON *v.* UNITED STATES

No. 91–8685.   Argued March 24, 1993—Decided May 3, 1993

*William Mallory Kent* argued the cause and filed a brief for petitioner.

*Paul J. Larkin, Jr.*, argued the cause for the United States. With him on the brief were *Acting Solicitor General Bryson, Acting Assistant Attorney General Keeney,* and *John F. DePue.*\*

JUSTICE KENNEDY delivered the opinion of the Court.

In this case we review a decision of the Court of Appeals for the Eleventh Circuit holding that the commentary to the

---

\**Robert Augustus Harper* filed a brief for the Florida Association of Criminal Defense Lawyers as *amicus curiae.*

Sentencing Guidelines is not binding on the federal courts. We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.

Petitioner Terry Lynn Stinson entered a plea of guilty to a five-count indictment resulting from his robbery of a Florida bank. The presentence report recommended that petitioner be sentenced as a career offender under the Sentencing Guidelines. See United States Sentencing Commission, Guidelines Manual § 4B1.1 (Nov. 1989). Section 4B1.1 provided that a defendant is a career offender if:

> "(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

All concede that petitioner was at least 18 years old when the events leading to the indictment occurred and that he then had at least two prior felony convictions for crimes of violence, thereby satisfying the first and third elements in the definition of career offender. It is the second element in this definition, the requirement that the predicate offense be a crime of violence, that gave rise to the ultimate problem in this case. At the time of his sentencing, the Guidelines defined "crime of violence" as, among other things, "any offense under federal or state law punishable by imprisonment for a term exceeding one year that . . . involves conduct that presents a serious potential risk of physical injury to another." § 4B1.2(1). The United States District Court for the Middle District of Florida found that petitioner's conviction for the offense of possession of a firearm by a convicted felon, 18 U. S. C. § 922(g), was a crime of violence, satisfying the second element of the career offender definition. Al-

though the indictment contained other counts, the District Court relied only upon the felon-in-possession offense in applying the career offender provision of the Guidelines. In accord with its conclusions, the District Court sentenced petitioner as a career offender.

On appeal, petitioner maintained his position that the offense relied upon by the District Court was not a crime of violence under USSG §§ 4B1.1 and 4B1.2(1). The Court of Appeals affirmed, holding that possession of a firearm by a felon was, as a categorical matter, a crime of violence. 943 F. 2d 1268, 1271–1273 (CA11 1991). After its decision, however, Amendment 433 to the Guidelines Manual, which added a sentence to the commentary to § 4B1.2, became effective. The new sentence stated that "[t]he term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon."[1] USSG App. C, p. 253 (Nov. 1992). See § 4B1.2, comment., n. 2. Petitioner sought rehearing, arguing that Amendment 433 should be given retroactive effect, but the Court of Appeals adhered to its earlier interpretation of "crime of violence" and denied the petition for rehearing in an opinion. 957 F. 2d 813 (CA11 1992) *(per curiam)*.

Rather than considering whether the amendment should be given retroactive application, the Court of Appeals held that commentary to the Guidelines, though "persuasive," is of only "limited authority" and not "binding" on the federal courts. *Id.*, at 815. It rested this conclusion on the fact

---

[1] Amendment 433 was contrary to a substantial body of Circuit precedent holding that the felon-in-possession offense constituted a crime of violence in at least some circumstances. See, *e. g.*, *United States* v. *Williams*, 892 F. 2d 296, 304 (CA3 1989), cert. denied, 496 U. S. 939 (1990); *United States* v. *Goodman*, 914 F. 2d 696, 698–699 (CA5 1990); *United States* v. *Alvarez*, 914 F. 2d 915, 917–919 (CA7 1990), cert. denied, 500 U. S. 934 (1991); *United States* v. *Cornelius*, 931 F. 2d 490, 492–493 (CA8 1991); *United States* v. *O'Neal*, 937 F. 2d 1369, 1374–1375 (CA9 1990); *United States* v. *Walker*, 930 F. 2d 789, 793–795 (CA10 1991); 943 F. 2d 1268, 1271–1273 (CA11 1991) (case below).

that Congress does not review amendments to the commentary under 28 U. S. C. § 994(p). The Court of Appeals "decline[d] to be bound by the change in section 4B1.2's commentary until Congress amends section 4B1.2's language to exclude specifically the possession of a firearm by a felon as a 'crime of violence.'" 957 F. 2d, at 815. The various Courts of Appeals have taken conflicting positions on the authoritative weight to be accorded to the commentary to the Sentencing Guidelines,[2] so we granted certiorari. 506 U. S. 972 (1992).

The Sentencing Reform Act of 1984 (Sentencing Reform Act), as amended, 18 U. S. C. § 3551 *et seq.* (1988 ed. and Supp. III), 28 U. S. C. §§ 991–998 (1988 ed. and Supp. III), created the Sentencing Commission, 28 U. S. C. § 991(a), and charged it with the task of "establish[ing] sentencing policies

---

[2] With the decision below compare, *e. g., United States* v. *Weston,* 960 F. 2d 212, 219 (CA1 1992) (when the language of a guideline is not "fully self-illuminating," courts should look to commentary for guidance; while commentary "do[es] not possess the force of law," it is an "important interpretive ai[d], entitled to considerable respect"); *United States* v. *Joshua,* 976 F. 2d 844, 855 (CA3 1992) (commentary is analogous to an administrative agency's interpretation of an ambiguous statute; courts should defer to commentary if it is a "reasonable reading" of the guideline); *United States* v. *Wimbish,* 980 F. 2d 312, 314–315 (CA5 1992) (commentary has the force of policy statements; while courts "must consider" commentary, "they are not bound by [it] as they are by the guidelines"), cert. pending, No. 92–7993; *United States* v. *White,* 888 F. 2d 490, 497 (CA7 1989) (commentary constitutes a "contemporaneous explanatio[n] of the Guidelines by their authors, entitled to substantial weight"); *United States* v. *Smeathers,* 884 F. 2d 363, 364 (CA8 1989) (commentary "reflects the intent" of the Sentencing Commission); *United States* v. *Anderson,* 942 F. 2d 606, 611–613 (CA9 1991) (en banc) (commentary is analogous to advisory committee notes that accompany the federal rules of procedure and evidence; commentary should be applied unless it cannot be construed as consistent with the Guidelines); *United States* v. *Saucedo,* 950 F. 2d 1508, 1515 (CA10 1991) (refuses to follow amendment to commentary that is inconsistent with Circuit precedent; "our interpretation of a guideline has the force of law until such time as the Sentencing Commission or Congress changes the actual text of the guideline").

and practices for the Federal criminal justice system," § 991(b)(1). See *Mistretta* v. *United States,* 488 U. S. 361, 367–370 (1989). The Commission executed this function by promulgating the Guidelines Manual. The Manual contains text of three varieties. First is a guideline provision itself. The Sentencing Reform Act establishes that the Guidelines are "for use of a sentencing court in determining the sentence to be imposed in a criminal case." 28 U. S. C. § 994(a)(1). The Guidelines provide direction as to the appropriate type of punishment—probation, fine, or term of imprisonment—and the extent of the punishment imposed. §§ 994(a)(1)(A) and (B). Amendments to the Guidelines must be submitted to Congress for a 6-month period of review, during which Congress can modify or disapprove them. § 994(p). The second variety of text in the Manual is a policy statement: The Sentencing Reform Act authorizes the promulgation of "general policy statements regarding application of the guidelines" or other aspects of sentencing that would further the purposes of the Act. § 994(a)(2). The third variant of text is commentary, at issue in this case. In the Guidelines Manual, both guidelines and policy statements are accompanied by extensive commentary. Although the Sentencing Reform Act does not in express terms authorize the issuance of commentary, the Act does refer to it. See 18 U. S. C. § 3553(b) (in determining whether to depart from a guidelines range, "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission"). The Sentencing Commission has provided in a Guideline that commentary may serve these functions: commentary may "interpret [a] guideline or explain how it is to be applied," "suggest circumstances which . . . may warrant departure from the guidelines," or "provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline." USSG § 1B1.7.

As we have observed, "the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases." *Mistretta* v. *United States, supra,* at 391. See also *Burns* v. *United States,* 501 U. S. 129, 133 (1991). The most obvious operation of this principle is with respect to the Guidelines themselves. The Sentencing Reform Act provides that, unless the sentencing court finds an aggravating or mitigating factor of a kind, or to a degree, not given adequate consideration by the Commission, a circumstance not applicable in this case, "[t]he court shall impose a sentence of the kind, and within the range," established by the applicable guidelines. 18 U. S. C. §§ 3553(a)(4), (b). The principle that the Guidelines Manual is binding on federal courts applies as well to policy statements. In *Williams* v. *United States,* 503 U. S. 193, 201 (1992), we said that "[w]here . . . a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable Guideline." There, the District Court had departed upward from the Guidelines' sentencing range based on prior arrests that did not result in criminal convictions. A policy statement, however, prohibited a court from basing a departure on a prior arrest record alone. USSG § 4A1.3, p. s. We held that failure to follow the policy statement resulted in a sentence "imposed as a result of an incorrect application of the sentencing guidelines" under 18 U. S. C. § 3742(f)(1) that should be set aside on appeal unless the error was harmless. 503 U. S., at 201, 203.

In the case before us, the Court of Appeals determined that these principles do not apply to commentary. 957 F. 2d, at 814–815. Its conclusion that the commentary now being considered is not binding on the courts was error. The commentary added by Amendment 433 was interpretive and explanatory of the Guideline defining "crime of violence." Commentary which functions to "interpret [a] guideline or explain how it is to be applied," USSG § 1B1.7, controls, and

if failure to follow, or a misreading of, such commentary results in a sentence "select[ed] . . . from the wrong guideline range," *Williams* v. *United States, supra,* at 203, that sentence would constitute "an incorrect application of the sentencing guidelines" under 18 U. S. C. § 3742(f)(1). A Guideline itself makes this proposition clear. See USSG § 1B1.7 ("Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal"). Our holding in *Williams* dealing with policy statements applies with equal force to the commentary before us here. Cf. USSG § 1B1.7 (commentary regarding departures from the Guidelines should be "treated as the legal equivalent of a policy statement"); § 1B1.7, comment. ("Portions of [the Guidelines Manual] not labeled as guidelines or commentary . . . are to be construed as commentary and thus have the force of policy statements").

It does not follow that commentary is binding in all instances. If, for example, commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline. See 18 U. S. C. §§ 3553(a)(4), (b). Some courts have refused to follow commentary in situations falling short of such flat inconsistency. Thus, we articulate the standard that governs the decision whether particular interpretive or explanatory commentary is binding.

Different analogies have been suggested as helpful characterizations of the legal force of commentary. Some we reject. We do not think it helpful to treat commentary as a contemporaneous statement of intent by the drafters or issuers of the guideline, having a status similar to that of, for example, legislative committee reports or the advisory committee notes to the various federal rules of procedure and evidence. Quite apart from the usual difficulties of attributing meaning to a statutory or regulatory command by refer-

ence to what other documents say about its proposers' initial intent, here, as is often true, the commentary was issued well after the guideline it interprets had been promulgated. The guidelines of the Sentencing Commission, moreover, cannot become effective until after the 6-month review period for congressional modification or disapproval. It seems inconsistent with this process for the Commission to announce some statement of initial intent well after the review process has expired. To be sure, much commentary has been issued at the same time as the guideline it interprets. But neither the Guidelines Manual nor the Sentencing Reform Act indicates that the weight accorded to, or the function of, commentary differs depending on whether it represents a contemporaneous or *ex post* interpretation.

We also find inapposite an analogy to an agency's construction of a federal statute that it administers. Under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984), if a statute is unambiguous the statute governs; if, however, Congress' silence or ambiguity has "left a gap for the agency to fill," courts must defer to the agency's interpretation so long as it is "a permissible construction of the statute." *Id.*, at 842–843. Commentary, however, has a function different from an agency's legislative rule. Commentary, unlike a legislative rule, is not the product of delegated authority for rulemaking, which of course must yield to the clear meaning of a statute. *Id.*, at 843, n. 9. Rather, commentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice.

Although the analogy is not precise because Congress has a role in promulgating the guidelines, we think the Government is correct in suggesting that the commentary be treated as an agency's interpretation of its own legislative rule. Brief for United States 13–16. The Sentencing Commission promulgates the guidelines by virtue of an express congressional delegation of authority for rulemaking, see

*Mistretta* v. *United States,* 488 U. S., at 371–379, and through the informal rulemaking procedures in 5 U. S. C. § 553, see 28 U. S. C. § 994(x). Thus, the guidelines are the equivalent of legislative rules adopted by federal agencies. The functional purpose of commentary (of the kind at issue here) is to assist in the interpretation and application of those rules, which are within the Commission's particular area of concern and expertise and which the Commission itself has the first responsibility to formulate and announce. In these respects this type of commentary is akin to an agency's interpretation of its own legislative rules. As we have often stated, provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles* v. *Seminole Rock & Sand Co.,* 325 U. S. 410, 414 (1945). See, *e. g., Robertson* v. *Methow Valley Citizens Council,* 490 U. S. 332, 359 (1989); *Lyng* v. *Payne,* 476 U. S. 926, 939 (1986); *United States* v. *Larionoff,* 431 U. S. 864, 872–873 (1977); *Udall* v. *Tallman,* 380 U. S. 1, 16–17 (1965). See also 2 K. Davis, Administrative Law Treatise § 7:22, pp. 105–107 (2d ed. 1979).

According this measure of controlling authority to the commentary is consistent with the role the Sentencing Reform Act contemplates for the Sentencing Commission. The Commission, after all, drafts the guidelines as well as the commentary interpreting them, so we can presume that the interpretations of the guidelines contained in the commentary represent the most accurate indications of how the Commission deems that the guidelines should be applied to be consistent with the Guidelines Manual as a whole as well as the authorizing statute. The Commission has the statutory obligation "periodically [to] review and revise" the guidelines in light of its consultation with authorities on and representatives of the federal criminal justice system. See 28 U. S. C. § 994*(o)*. The Commission also must "revie[w] the presentence report, the guideline worksheets, the tribunal's

sentencing statement, and any written plea agreement," *Mistretta* v. *United States, supra,* at 369–370, with respect to every federal criminal sentence. See 28 U. S. C. § 994(w). In assigning these functions to the Commission, "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Braxton* v. *United States,* 500 U. S. 344, 348 (1991). Although amendments to guidelines provisions are one method of incorporating revisions, another method open to the Commission is amendment of the commentary, if the guideline which the commentary interprets will bear the construction. Amended commentary is binding on the federal courts even though it is not reviewed by Congress, and prior judicial constructions of a particular guideline cannot prevent the Commission from adopting a conflicting interpretation that satisfies the standard we set forth today.

It is perhaps ironic that the Sentencing Commission's own commentary fails to recognize the full significance of interpretive and explanatory commentary. The commentary to the Guideline on commentary provides:

> "[I]n seeking to understand the meaning of the guidelines courts likely will look to the commentary for guidance as an indication of the intent of those who wrote them. In such instances, the courts will treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter." USSG § 1B1.7, comment.

We note that this discussion is phrased in predictive terms. To the extent that this commentary has prescriptive content, we think its exposition of the role of interpretive and explanatory commentary is inconsistent with the uses to which the Commission in practice has put such commentary and the

command in .§ 1B1.7 that failure to follow interpretive and explanatory commentary could result in reversible error.

We now apply these principles to Amendment 433. We recognize that the exclusion of the felon-in-possession offense from the definition of "crime of violence" may not be compelled by the guideline text. Nonetheless, Amendment 433 does not run afoul of the Constitution or a federal statute, and it is not "plainly erroneous or inconsistent" with § 4B1.2, *Bowles* v. *Seminole Rock & Sand Co.*, *supra*, at 414. As a result, the commentary is a binding interpretation of the phrase "crime of violence." Federal courts may not use the felon-in-possession offense as the predicate crime of violence for purposes of imposing the career offender provision of USSG § 4B1.1 as to those defendants to whom Amendment 433 applies.

The Government agrees that the Court of Appeals erred in concluding that commentary is not binding on the federal courts and in ruling that Amendment 433 is not of controlling weight. See Brief for United States 11–19. It suggests, however, that we should affirm the judgment on an alternative ground. It argues that petitioner's sentence conformed with the Guidelines Manual in effect when he was sentenced, *id.*, at 22–29, and that the sentence may not be reversed on appeal based upon a postsentence amendment to the provisions in the Manual, *id.*, at 19–22. The Government claims that petitioner's only recourse is to file a motion in District Court for resentencing, pursuant to 18 U. S. C. § 3582(c)(2). Brief for United States 33–35. It notes that after the Court of Appeals denied rehearing in this case, the Sentencing Commission amended USSG § 1B1.10(d), p. s., to indicate that Amendment 433 may be given retroactive effect under § 3582(c)(2). See Amendment 469, USSG App. C, p. 296 (Nov. 1992).

We decline to address this argument. In refusing to upset petitioner's sentence, the Court of Appeals did not consider

the nonretroactivity theory here advanced by the Government; its refusal to vacate the sentence was based only on its view that commentary did not bind it. This issue, moreover, is not "fairly included" in the question we formulated in the grant of certiorari, see 506 U. S. 972 (1992). Cf. this Court's Rule 14.1(a). We leave the contentions of the parties on this aspect of the case to be addressed by the Court of Appeals on remand.

The judgment of the United States Court of Appeals for the Eleventh Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*