**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alcee J. LEBLANC, Defendant–Appellant.**

**No. 94–2030.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 4, 1994.

Decided Jan. 17, 1995.

Daniel P. Bach, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Madison, WI, for plaintiff-appellee.

Robert T. Ruth (argued), Madison, WI, for defendant-appellant.

Before CUDAHY and FLAUM, Circuit Judges, and ROSZKOWSKI, District Judge.*

ROSZKOWSKI, District Judge.

This is an appeal from the judgment of the district court in imposing sentence on the defendant. The defendant contends that the court erred in its interpretation of the sentencing guidelines.

---

* The Honorable Stanley J. Roszkowski, District Judge for the Northern District of Illinois, Western Division, is sitting by designation.

The defendant and William Michael Baisden were indicted on a charge of possession of stolen goods that had crossed a state boundary in violation of 18 U.S.C. § 2315. On February 28, 1994, pursuant to a plea agreement, he entered a plea of guilty to the one count indictment. On April 26, 1994, the district court sentenced him to 12 months imprisonment.

At sentencing, the district court applied the November, 1993, edition of the United States Sentencing Commission *Guidelines Manual.* (Dkt. No. 50, p. 5.) The district court adopted the amended guideline calculations of the Probation Office and found that the adjusted offense level was 10, which included a two level increase for more than minimal planning, pursuant to § 2B1.1(b)(5)(A). (*Id.*) The district court found the applicable criminal history category to be IV, as it attributed three points each to the defendant's 1984 convictions and one point to the driving while intoxicated offense. (*Id.*) However, the court departed downward to category III based on its finding that category IV overstated the seriousness of the defendant's criminal record. (*Id.*) The resulting guideline range was 10–16 months, within which the court selected a sentence of 12 months. (App. p. 32–33.) This appeal followed.

The defendant contends that his sentencing guidelines range was incorrectly determined due to two alleged errors committed by the district court. First, he claims that his correct criminal history category should have been III instead of IV because the driving while intoxicated offense (the one point attributable to which moved the defendant to category IV) was a local ordinance violation which, according to the defendant, should not count as a prior sentence under U.S.S.G. § 4A1.2. Second, the defendant asserts that the district court erred in finding that he had engaged in "more than minimal

planning" as that term is defined in U.S.S.G. § 1B1.1, Application Note 1(f).

On May 19, 1993, defendant was found guilty of driving while intoxicated, in violation of Madison (Wisconsin) Municipal Ordinance 12.64(1)(A). He was fined $175.00 and assessed court costs of $310.00, and his drivers license was suspended for six months.

Citing pertinent language from the United States Sentencing Commission *Guidelines Manual* as well as this court's opinion in *United States v. Lewis,* 896 F.2d 246 (7th Cir.1990), the district court found that the driving while intoxicated offense counted as a prior sentence for purposes of calculating the defendant's criminal history category.[1]

■ Whether the district court correctly determined that a conviction for driving while intoxicated is a prior sentence under Chapter 4 of the Sentencing Guidelines is subject to *de novo* review. *United States v. Gould,* 983 F.2d 92, 93 (7th Cir.1993).

■ Section 4A1.1 of the Sentencing Guidelines sets forth point totals for each "prior sentence" imposed upon a defendant. The sum of those points determines the defendant's criminal history category. Section 4A1.2 defines a "prior sentence." In particular, § 4A1.2(c)(1) states that sentences for certain misdemeanor and petty offense convictions, including local ordinance violations which are not also criminal offenses under state law, count as prior sentences only if they meet one of two conditions: 1) the sentence must be a term of probation of at least one year or a term of imprisonment of at least thirty days, or 2) the offense in question was similar to the instant offense. Neither of those conditions applied to the defendant's driving while intoxicated offense.

However, the application notes to § 4A1.2 clarify that the Sentencing Commission in-

---

1. The district court effectively mooted its finding by departing downward to the next lowest criminal history category, which put the defendant in the sentencing range he would have been in had the driving while intoxicated offense not been counted. However, as the defendant points out, the district court's criminal history determination could subject the defendant to a more severe penalty if he violates a condition of supervised release, since the guideline range for any such violation would be based in part on the real criminal history category determined at the time of sentencing, which is not to be recalculated. § 7B1.4, App. Note 1, U.S.S.G. Thus, it appears that this appeal is the defendant's only opportunity to challenge the district court's criminal history finding, even though the resolution of the issue he raises will not affect his sentence.

tended driving while intoxicated offenses to count as prior sentences for purposes of determining a defendant's criminal history category under the federal sentencing guidelines. Application Note 5 to § 4A1.2 provides that:

> Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of 4A1.2(c).

Relying upon that application note, this court found in *Lewis* that a first offense driving while intoxicated conviction under Wisconsin law counted as a prior sentence even though no jail sentence was authorized for that offense. 896 F.2d at 249–250.

The defendant claims that this case is distinguishable from *Lewis* because he was convicted of violating a local ordinance which is not a criminal offense under state law, and therefore is excepted as a prior sentence under § 4A1.2(c)(1). According to the defendant, the plain language of that guideline states that only local ordinance violations that are also criminal violations under state law count as prior sentences. The defendant claims that Application Note 5 should be disregarded because it conflicts with the plain language of the guideline.

The defendant's argument is flawed due to his failure to consider § 4A1.2 and its commentary as a whole. Instead, the defendant too readily dismisses the significance of Application Note 5 while embracing what he considers to be the plain meaning of § 4A1.2(c)(1). The Sentencing Commission warned that the failure to heed the commentary to a guideline could lead to an incorrect application of that guideline. U.S.S.G. § 1B1.7. The Supreme Court has declared that the commentary in the guidelines is binding unless it is unconstitutional, in violation of a federal statute, or clearly inconsistent with the guideline(s) it explains. *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993).

In *Stinson*, the Supreme Court makes very clear that not only are the guidelines binding, but the commentary under the guidelines are as well. The court explains its reasoning as follows:

> [I]f a statute is unambiguous the statute governs; if, however, Congress' silence or ambiguity has "left a gap for the agency to fill," courts must defer to the agency's interpretation so long as it is "a permissible construction of the statute." Commentary, however, has a function different from an agency's legislative rule. Commentary, unlike a legislative rule, is not the product of delegated authority for rulemaking, which of course must yield to the clear meaning of a statute. Rather, commentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice.

*Id.* at ——, 113 S.Ct. at 1918 (citations omitted).

Continuing, the court observed that commentary is to be treated as an agency's interpretation of its own legislative rule. The court said:

> Thus, the guidelines are the equivalent of legislative rules adopted by federal agencies. The functional purpose of commentary (of a kind at issue here) is to assist in the interpretation and application of those rules, which are within the Commission's particular area of concern and expertise and which the Commission itself has the first responsibility to formulate and announce. In these respects this type of commentary is akin to an agency's interpretation of its own legislative rules. As we have often stated, provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). See, e.g. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359, 109 S.Ct. 1835, 1850, 104 L.Ed.2d 351 (1989); *Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986); *United States v. Larionoff*, 431 U.S. 864, 872–873, 97 S.Ct. 2150, 2155–2156, 53 L.Ed.2d 48 (1977); *Udall v. Tall-*

*man,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965). See also 2 K. Davis, Administrative Law Treatise § 7:22, pp. 105–107 (2d ed. 1979).

*Id.* at ——, 113 S.Ct. at 1919. Finally, the court holds that failure to follow interpretative and explanatory commentary could result in reversible error. *Id.* at ——, 113 S.Ct. at 1920.

■ In view of this court's decision in *Lewis* and the Supreme Court's enunciation of the application of the guidelines and the commentary in *Stinson,* it is difficult to give credence to the defendant's position. In *Stinson,* the Supreme Court makes very clear that the application notes are to be followed except in rare circumstances where they are unlawful or irreconcilably in conflict with the guidelines. This is not one of those rare circumstances. On the contrary, Application Note 5 is clear: Driving while intoxicated offenses, and similar offenses by whatever name they are known, count as prior sentences. That application note reflects the Sentencing Commission's conclusion "that driving while intoxicated offenses are of sufficient gravity to merit inclusion in the defendant's criminal history, however they might be classified under state law." *United States v. Jakobetz,* 955 F.2d 786, 806 (2nd Cir.1992), *citing Lewis,* 896 F.2d at 250. It is obvious that it is the underlying violation which mandates its treatment as a prior sentence. If § 4A1.2(c)(1) is not construed in that manner, then the guidelines would treat local ordinance driving while intoxicated violations differently than state law driving while intoxicated violations unless drunk driving is a criminal offense under state law. That construction of § 4A1.2(c)(1) would eviscerate Application Note 5 and create the type of unwarranted sentencing disparities the guidelines were designed to eliminate.

The district court's conclusion is consistent with the reading of the guidelines and the commentary as well as this court's decision in *Lewis* and the Supreme Court's decision in *Stinson.*

■ Turning now to the defendant's second contention, namely, that the district court erred in finding that the defendant had engaged in more than minimal planning as

that term is defined in U.S.S.G. § 1B1.1, Application Note 1(f), we find that the defendant's argument is without merit.

At sentencing, the district court added two points to the base offense level for "more than minimal planning" pursuant to § 2B1.1(b)(5)(A). Specifically, the court found that the defendant's conduct, including finding someone to transport the zinc to Wisconsin, making telephone calls to set up the sale of the zinc, and thereafter negotiating the price for the zinc, was "more planning than is typical for the commission of the offense in its simple form." (App. p. 23.) The district court's conclusion is reviewable for clear error and should be affirmed "if [the district court] correctly applied the Guidelines to findings of fact that do not leave [the appellate court] 'with the definite and firm conviction that a mistake was made.'" *United States v. Nafzger,* 974 F.2d 906, 917 (7th Cir.1992) (citations omitted). *See also United States v. Panadero,* 7 F.3d 691, 694–95 (7th Cir.1993).

The defendant contends that the district court made three errors in its assessment of the enhancement for more than minimal planning. First, the defendant claims that the district court misinterpreted the guidelines by mistakenly paraphrasing the definition of "more than minimal planning." Second, the defendant states that the district court erroneously found that he had made "numerous phone calls" after the zinc was in Wisconsin, whereas the record supports no such finding. Third, the defendant asserts that the district court held him accountable for conduct which preceded the defendant's knowledge that the zinc was stolen.

The definition of "more than minimal planning" in the sentencing guidelines reads, in part, as follows:

"More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense, other than conduct to which § 3C1.1 (Obstructing or Impeding the Administration of Justice) applies.

"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses ... U.S.S.G. § 1B1.1, App. Note 1(f). The defendant focuses on the court's use of the term "simplest" to support his assumption that the court applied the wrong standard in assessing what constitutes more than minimal planning.

Apart from the court's solitary use of the word "simplest" instead of "simple," there is nothing in the record to suggest that the court's understanding of the term "more than minimal planning" was different than the definition set forth in the guidelines. In fact, a few sentences before the court used the word "simplest," it recited what the defendant concedes to be the correct standard. The court repeated the correct standard in the amended Judgment and Commitment Order.

The defendant also concedes that once he realized that the zinc was stolen, he continued in his negotiations to sell the zinc. He contacted Mr. Hauge, who was familiar with the pricing of the metal, in order to help him in the transfer of the metal. He sought and continued to have Mr. Baisden deliver the ingots from Illinois to Madison. He and Baisden travelled from Illinois to Wisconsin where they met with Hauge. He was involved in negotiations for the sale of the ingots and wanted the Samuels check made payable to Hauge with Hauge disbursing the funds to him and Baisden. The district court found the defendant's conduct to be "more than minimal planning than is typical for the commission of the offense in its simple form." The court considered the number of calls, the arrangements which were made to have the materials delivered to Wisconsin, the numerous discussions with Hauge, the negotiations with Samuels Metal, the selling of the metal and the attempted plan to have the funds disbursed. The court found these factors to be more than sufficient to find that the defendant had engaged in more than minimal planning. The factual findings of the district court are reviewable for clear error. We find no clear error here. In fact, the record overwhelmingly supports the findings and conclusions reached by the district court.

The judgment of the district court is AFFIRMED.