In the

# United States Court of Appeals
### For the Seventh Circuit

No. 05-4587

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN DYER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
Nos. 05 CR 30039 & 05 CR 30056—**Jeanne E. Scott**, *Judge.*

ARGUED JUNE 6, 2006—DECIDED SEPTEMBER 28, 2006

Before FLAUM, *Chief Judge*, and POSNER and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Brian Dyer is no stranger to the criminal justice system, or to illegal drugs and violence for that matter. His latest run-in with the law (two actually) resulted in him pleading guilty to three federal felony charges. Dyer appeals the district court's application of the career offender enhancement under the Sentencing Guidelines, arguing his offenses of conviction were not "controlled substance offenses." We disagree and affirm Dyer's sentence.

## I. HISTORY

On January 13, 2004, police officers responded to a call from Nichole Meyer, then Dyer's live-in girlfriend. Meyer asked police to meet her at the home to ensure that Dyer was not around before she entered. Earlier that day, Meyer had reported to police that Dyer had taken her daughter from her and had attempted to run his car into Meyer's father's car. Six months earlier, Dyer pled guilty to battery after headbutting Meyer in the face. This time when the officers responded, they searched the residence, and recovered a rifle and marijuana paraphernalia. The state drug charge was dropped in lieu of the federal indictment, returned on May 6, 2005, charging Dyer with a single-count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

On May 17, 2005, police officers were executing a search warrant at another residence when Dyer arrived in his car. Police arrested Dyer, and a police dog alerted officers to the presence of an illegal substance inside Dyer's car. The officers searched the car and found a cooler and a plastic bottle with a tire hose attached to it, an apparatus commonly used to steal anhydrous ammonia. The search also revealed purchase receipts for pseudoephedrine, a chemical used in the manufacture of methamphetamine. Officers searched Dyer's residence with the permission of Meyer, who by then had married Dyer and taken his surname.

Inside the Dyers' house, officers found more methamphetamine manufacturing materials, including a glass jar with a liquid containing lithium strips, a jug of anhydrous ammonia, and 9.81 grams of pseudoephedrine. Officers also found a semi-automatic pistol and ammunition.

On July 8, 2005, the government charged Dyer by information with a second count of being a felon in possession of a firearm and with possession of pseudoephedrine with

intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(1). The two cases were consolidated, and Dyer pled guilty to the charges without a prior plea agreement.

At Dyer's sentencing hearing, the district court applied the 2004 version of the Sentencing Guidelines. The court determined that Dyer qualified as a career offender under §§ 4B1.1 and 4B1.2 of the Sentencing Guidelines. Specifically, the court found that Dyer was over 18 years of age at the time he committed the instant offense, the instant offense of conviction was a "controlled substance offense," and Dyer had at least two prior felony convictions for "crimes of violence." Dyer had argued his offenses of conviction were not "controlled substance offenses" as defined by § 4B1.2.

After classifying Dyer as a career offender under the advisory Guidelines, the court found Dyer's base offense level was 32 and reduced that three levels for acceptance of responsibility. With a criminal history category of VI and a final offense level of 29, the court calculated Dyer's advisory Guidelines range to be 151 to 188 months' imprisonment. With the government's acquiescence, the court imposed a below-Guideline prison sentence of 144 months. Dyer appeals his sentence.

## II. ANALYSIS

Both sides agree that Dyer is a career offender under the Guidelines if any of his instant offenses is either a crime of violence or a controlled substance offense; Dyer concedes the other requirements of predicate offenses and age are met. *See* U.S.S.G. § 4B1.1(a). At issue is whether Dyer's offense of conviction for possession of pseudoephedrine with intent to manufacture methamphetamine, is a controlled substance offense under the Guidelines. This is a question

of law we review de novo. *United States v. Hankton*, 432 F.3d 779, 795 (7th Cir. 2005).

The term "controlled substance offense" is defined by the Guidelines as follows:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute or dispense.

U.S.S.G. § 4B1.2(b).

Although methamphetamine is a controlled substance, *see United States v. Macedo*, 371 F.3d 957, 962 (7th Cir. 2004), Dyer did not possess any. Pseudoephedrine is not a controlled substance but merely a listed chemical. *See* 21 U.S.C. § 802(34)(K). Therefore, Dyer did not possess a controlled substance, which makes the last portion of § 4B1.2(b) inapplicable. Dyer argues his conviction for possession of pseudoephedrine with the intent to manufacture methamphetamine falls outside the first portion of § 4B1.2(b) because he was not convicted of actually manufacturing the controlled substance.

Years ago, Dyer's argument had some appeal. In *United States v. Wagner*, the Tenth Circuit narrowly interpreted § 4B1.2(b) to find that possession of a listed chemical did not constitute a controlled substance offense. 994 F.2d 1467, 1474-75 (10th Cir. 1993). But the Sentencing Commission did not agree with *Wagner* and issued an application note to § 4B1.2 providing, "Unlawfully possessing a listed chemical with intent to manufacture a controlled substance

(21 U.S.C. § 841([c][1])(1)) is a 'controlled substance offense."
The purpose of the application note, the Commission stated,
was to resolve a circuit split between the Tenth Circuit in
*Wagner* and the Fifth Circuit in *United States v. Calverley*,
11 F.3d 505, 508-12 (5th Cir. 1993) (holding possession of a
listed chemical with intent to manufacture to be a con-
trolled substance offense under § 4B1.2). U.S.S.G. app. C,
amend. 568. According to the Commission, "there is such a
close connection between possession of a listed chemical . .
. with intent to manufacture a controlled substance and
actually manufacturing a controlled substance that the
former offense[. . . is] fairly considered as [a] controlled
substance trafficking offense[ ]." *Id*. In light of the applica-
tion note, the Tenth Circuit recently noted that *Wagner* is
inconsistent with the new Guidelines provision in *United
States v. Smith*, 433 F.3d 714, 716-18 (10th Cir. 2006).

An application note is binding authority "unless it
violates the Constitution or a federal statute, or is inconsis-
tent with, or a plainly erroneous reading of" that Guideline.
*Stinson v. United States*, 508 U.S. 36, 38 (1993); *see United
States v. Mitchell*, 353 F.3d 552, 556 (7th Cir. 2003); *United
States v. LeBlanc*, 45 F.3d 192, 194-95 (7th Cir. 1998); *see
also* U.S.S.G. § 1B1.7. Dyer claims the application note is
inconsistent with the Guideline. Dyer refers to the statutory
definition of "manufacture," but this does him more harm
than good. "Manufacture" is defined broadly and can mean
the "preparation . . . of a drug or other substance, either
directly or indirectly or . . . by means of chemical synthesis."
*See* 21 U.S.C. § 802(15). The possession of a List I chemical,
a chemical which is "used in manufacturing a controlled
substance . . . and is important to the manufacture of the

---

[1] The application note cites to § 841(*d*)(1) (emphasis added). In
2000, § 841 was amended and recodified, with subsection (d) being
re-designated subsection (c). Pub. L. No. 106-172, § 9, 114 Stat. 7,
13 (2000). The application note does not reflect this change.

controlled substances," 21 U.S.C. § 802(34), with the intent to manufacture the drug comes remarkably close to preparation of a drug by chemical synthesis. And whatever may be missing conceptually between possession and manufacture, presumably some type of manipulation of the ingredient, does not give rise to an inconsistency between the two. Because we read the Guidelines and commentary as a whole, *see LeBlanc*, 45 F.3d at 194, the application note shall be given effect.

Therefore, possession of pseudoephedrine with the intent to manufacture methamphetamine is a controlled substance offense under § 4B1.2, and the district court's determination of Dyer to be a career offender under § 4B1.1 was correct.

Dyer does not otherwise challenge the reasonableness of his below-Guideline sentence.

### III.  CONCLUSION

Dyer's sentence is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
