In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2277

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PATRICK L. STITMAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. O3 CR 819—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED FEBRUARY 9, 2006—DECIDED JANUARY 10, 2007

Before EASTERBROOK, *Chief Judge*, and BAUER and
WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* In the summer of 2003, Patrick
Stitman went on a bank robbery spree, hitting three
banks on three separate occasions. Each time, he threat-
ened to shoot or kill the bank teller, even though he was
actually unarmed. During one robbery, Stitman told the
bank teller that he had a gun and pointed to his hip,
where the teller observed a "bulge." Ultimately Stitman
was caught and pleaded guilty to three counts of bank
robbery in violation of 18 U.S.C. § 2113(a).

At sentencing, the district court applied a three-
level sentencing enhancement based on U.S.S.G.

§ 2B3.1(b)(2)(E), after it found that Stitman created the appearance that he "brandished or possessed" a dangerous weapon. In reaching that conclusion, the court relied on U.S.S.G. § 2B3.1, cmt. n.2, which in turn is informed by U.S.S.G. § 1B1.1, cmt. n.1(D) (defining the term "dangerous weapon"). Additionally, the district court added two points to Stitman's criminal history calculation because of a prior conviction. Stitman was sentenced to 70 months in prison.

On appeal, Stitman argues that the district court clearly erred when it imposed the enhancement under § 2B3.1(b)(2)(E), because, rather than "brandishing or possessing" a dangerous weapon, he had merely concealed his hand in his pocket during the course of the bank robbery. Stitman also claims that the manner in which the district court calculated his sentence offends the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Because we conclude that the district court did not err in sentencing Stitman, we affirm the district court's judgment.

**I**

Stitman's robberies began on July 23, 2003, at a TCF bank in Chicago. During the course of the robbery, he told the bank teller "I have a gun, give me $3,000, I'm going to count to ten." The teller gave him approximately $1,810. About a week later, on July 31, 2003, Stitman decided to rob another Chicago-area TCF bank. Again, he approached the bank teller and said something to the effect of "Give me all your money, I have a gun." This time, however, when Stitman told the teller that he had a gun, he waved at his side, where the teller observed a bulge by his hip. Another bank teller overheard Stitman say that he was armed and noticed that Stitman had one of his hands in his pocket as if he was concealing a weapon. After the

teller gave Stitman some money, Stitman replied, "I want more. No funny money. You have 10 seconds or you are going to die." At that point, Stitman began counting to ten. The frightened teller complied with Stitman's request, giving him more of the bank's money; in total, Stitman recovered $4,349. (There is no question on appeal that both of these banks were insured by the Federal Deposit Insurance Corporation (FDIC) at the time Stitman committed these crimes).

Apparently satisfied with his success up until this point, Stitman decided to try his luck again by robbing the same TCF bank that he had robbed on July 31. On August 21, 2003, Stitman entered that bank, approached the teller, and told the teller "Give me all your hundreds, I have a gun." The teller gave him approximately $4,000. During the course of this robbery, however, a security guard overheard Stitman demanding money from the bank teller and recognized him as the July 31 bank robber. The security guard apprehended Stitman and recovered $3, 990.

A grand jury indicted Stitman on three counts of bank robbery in violation of 18 U.S.C. § 2113(a); Stitman pleaded guilty to each count. Prior to sentencing, the government argued that, among other enhancements, Stitman's offense level should be increased by three pursuant to U.S.S.G. § 2B3.1(b)(2)(E) because he created the appearance of brandishing a dangerous weapon. The government was referring to the July 31 robbery, during which Stitman told the bank teller that he had a gun and motioned to his hip where the teller observed a bulge in his pants pocket. Stitman countered with the argument that the three-level enhancement was not appropriate because he merely had his hand in his pants, as opposed to some object that he used to create the appearance of a gun. He argued that if any sentencing enhancement were to apply, he should receive only a two-level en-

hancement for making a threat of death. See U.S.S.G. § 2B3.1(b)(2)(F). Stitman also asked the district court to take into account his relationship with his six-year-old son in imposing a sentence.

Ultimately, the district court agreed with the government that the three-point enhancement was applicable. On the criminal history side, the court added two points to Stitman's score based upon a prior conviction. With these adjustments, Stitman's guidelines range was 70-87 months. The court imposed a sentence of 70 months in prison.

## II

In an appeal from a sentence, we review both findings of fact and applications of the Sentencing Guidelines for clear error. See, *e.g., United States v. Hart,* 226 F.3d 602, 604 (7th Cir. 2000). We review *de novo* questions of law involving the interpretation of a provision of the Guidelines. *Id.* The latter standard also applies to Stitman's claim that the district court failed to appreciate the advisory nature of the Guidelines. See *United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1046 (7th Cir. 2005) ("Because defendant's argument is based on procedural errors and not on the application of the factors, it is not appropriate to consider defendant's arguments under the 'reasonableness' framework. Instead, this Court should review the question of whether the district court complied with the mandatory post-*Booker* sentencing procedures under a non-deferential standard of review.") (internal citations omitted).

Stitman argues that the district court clearly erred in applying a three-level enhancement to his sentence under § 2B3.1(b)(2)(E) of the Sentencing Guidelines. Section 2B3.1(b)(2)(E) provides for this enhancement "if a

dangerous weapon was brandished, or possessed" in connection with a robbery offense. The application notes for the 2003 Sentencing Guidelines explicitly indicate that an object will be considered a "dangerous weapon" for purposes of subsection (b)(2)(E) if "the object closely resembles an instrument capable of inflicting death or serious bodily injury" or "the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 2B3.1(b)(2)(E), cmt. n.2. We have stressed that courts are to apply an "objective standard in determining whether a particular object appeared to be a dangerous weapon within the meaning of U.S.S.G. § 2B3.1(b)(2)(E)." *Hart*, 226 F.3d at 607 (7th Cir. 2000). The test is whether "a reasonable person, under the circumstances of the robbery, would have regarded the object that the defendant brandished, displayed or possessed as a dangerous weapon. . . ." *Id.*

Stitman concedes that he told the teller that he had a gun, and that the teller may have observed a bulge in his pocket, but he argues that he merely had his hand in his pocket and was not in possession of any type of object that a reasonable person could have perceived as a dangerous weapon. In effect, he is saying that as a matter of law his hand cannot be the type of object contemplated by the guidelines. In support of his argument, he relies heavily on *Hart*. In that case, during several different robberies, the defendant placed a lunch or shoe box on the bank counter and informed the teller that he had a bomb in the box. *Id.* at 603-04. In appealing the district court's application of the three-level sentencing enhancement for brandishing a weapon, Hart argued that the "dangerous weapon requirement" of U.S.S.G. § 2B3.1(b)(2)(E) could not be satisfied without the presence of either an actual weapon or the replica of an actual weapon (such as a toy gun or a plastic knife). *Id.* at 604. While recogniz-

ing that a box is not a replica of a dangerous weapon, we concluded that, for the purposes of the Guidelines, "appearances count as well as reality." *Id.* at 605 (quoting *United States v. Koonce*, 991 F.2d 693, 697 (11th Cir. 1993)). We wrote that "the risk of a violent response that can flow from brandishing, displaying or possessing a dangerous weapon while perpetrating a robbery is just as real whether the object is an actual weapon or merely an object used by the defendant to create the illusion of a dangerous weapon." *Id.*

The most serious problem with Stitman's argument is that it disregards Application Note 2 to § 2B3.1 and Application Note 1(D) to § 1B1.1. It is well established that "[a]n application note is binding authority 'unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of' that Guideline." *United States v. Dyer,* 464 F.3d 741, 743 (7th Cir. 2006); quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993); see also *United States v. Mitchell*, 353 F.3d 552, 556 (7th Cir. 2003); *United States v. LeBlanc*, 45 F.3d 192, 194-95 (7th Cir. 1995). Application Note 2 to § 2B3.1 instructs that:

> [A]n object shall be considered to be a dangerous weapon for purposes of subsection (b)(2)(E) if (A) the object closely resembles an instrument capable of inflicting death or serious bodily injury; or (B) the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury (*e.g.*, a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

See also U.S.S.G. § 1B1.1, cmt. n.1(D)(ii)(II) (defining the term "dangerous weapon" for the Guidelines as a whole and introducing the hand-in-towel example). Stitman's behavior, for all practical purposes, was identical to the

example given in the Application Notes. The difference between wrapping a hand in a towel and concealing it in a pocket is inconsequential.

For the purposes of this enhancement, therefore, the type of object that the perpetrator uses to create the appearance of a dangerous weapon is irrelevant; what is important is whether the object creates an objectively reasonable belief that the perpetrator is armed. See *Hart*, 226 F.3d at 608-9 ("[T]he appearance of dangerousness is determined by viewing the object, not in isolation, but in the context of the offense."). Other circuits, following the Application Notes, have explicitly held that a hand can qualify as such an "object" for purposes of § 2B3.1(b)(2)(E). See, *e.g.*, *United States v. Dixon*, 982 F.2d 116 (3d Cir. 1992) (holding that draping a towel over a hand to create the appearance of a gun was sufficient for the three-level enhancement to apply); *United States v. Vincent*, 121 F.3d 1451, 1455 (11th Cir. 1997) ("[A] 3 level enhancement is proper where a robber uses a finger or some other hard object to cause the victim to believe that it is a dangerous weapon.").

Perhaps it is unwise, from the standpoint of marginal deterrence, to treat concealing a hand in a pocket or possessing a harmless object just as harshly as actually possessing a dangerous weapon. There is, however, a reasonable concern that using something to create the impression that a perpetrator is carrying a dangerous weapon runs the risk of inciting just as much violence as if the robber actually possessed a gun. In Stitman's case, for example, a security guard, taking Stitman at his word and observing the bulge in his pocket, could have drawn her own weapon in an effort to prevent Stitman from using his. We cannot say that the Sentencing Commission was required to disregard this possibility.

It is the district court's job to determine whether a particular item objectively created this impression. The

district court here understood this and found that "Stitman's behavior was such as to generate belief on the part of his observers, reasonable observers," that he was in possession of a weapon. On the record the district court noted that it "[did not] think the mere fact that Mr. Stitman had his hand in his pocket is enough," but that "the circumstances go beyond simply a hand in a pocket." As examples of the "specific circumstances" that it was talking about, it noted that Stitman stipulated in his plea agreement that he told a bank teller that he had a gun and "when stating that he had a gun, [he] motioned to his side where the teller observed a bulge." The district court also took into account the fact that the teller who observed the bulge was not alone; another teller observed that Stitman had his hand in his pocket as if he had a weapon. We cannot say that the district court's conclusion that Stitman's actions were enough to lead an objective observer to believe that he was in possession of a gun was clear error.

## III

Next, Stitman argues that the district court erred in adding two points to his criminal history calculation pursuant to U.S.S.G. § 4A1.1(b), which provides that two points are added "for each prior sentence of imprisonment of at least sixty days. . .." The sentence in question was imposed in April 1996, when Stitman was convicted in Pennsylvania of driving under the influence with a suspended or revoked driver's license. Upon his arrest, Stitman was held in custody for five months (because the offense was a violation of his parole), at which point he pleaded guilty and was sentenced to serve an indeterminate sentence of 30 days to six months' imprisonment. Because he had already served five months of his sentence, the PSR indicates that he was immediately paroled after pleading guilty.

At the sentencing hearing, his lawyer argued that "[h]ad he been sentenced to time served under that very same statute, he would have received one point instead of the indeterminate sentence, which has him at two points." See U.S.S.G. § 4A1.1(c) (providing for a one-point addition, up to four points, for any sentence that is not counted in § 4A1.1(a) or § 4A1.1(b)). Stitman now seems to be arguing that the district court's conclusion that the phrase "term of imprisonment" means the maximum sentence that could have been served under an indeterminate sentence, as opposed to the time actually served, violates the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), although he is not clear on this point.

We fail to see how Stitman's argument makes any practical difference in this case. The actual time that Stitman served in prison for this offense was five months, well beyond the 60 days mentioned in § 4A1.1(b). There can be no doubt that the two-point addition is appropriate. Moreover, nothing in *Booker* changed the way that criminal history is calculated under the Guidelines. See *United States v. Carpenter*, 406 F.3d 915, 917 (7th Cir. 2005) ("*Booker* phrased the constitutional rule this way: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt. Criminal history is all about prior convictions; its ascertainment therefore is an issue of law excluded by *Booker*'s own formulation and governed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)."). We note as well that the sentence of 70 months that the district court chose was within the range of 63 to 78 months that would have applied if Stitman had prevailed on his criminal history argument. We have no facts on this record to indicate how much, if at all, the district court's discretion in choosing a reasonable sen-

tence was affected by the calculation of the range, but it is possible that the judge might have chosen 70 months no matter what. See *United States v. Mount,* 966 F.2d 262 (7th Cir. 1992). We need not resolve that issue here, since it is so clear that the court did not err in its calculation of Stitman's criminal history.

**IV**

Last, Stitman accuses the district court of failing to appreciate the advisory nature of the Sentencing Guidelines. At sentencing, Stitman presented testimony from Tracy Reasonover, a case manager at Beatrice Caffrey Youth Services (a private contractor through the Department of Child and Family Services). Reasonover was the case manager for Stitman's biological son, Patrick Stitman, Jr., who was six years old at the time of sentencing. The case worker testified regarding this child's sad history—he was born to a mother who used drugs throughout her pregnancy, was subsequently abandoned by his mother, and was a victim of abuse. She also noted that Patrick, Jr., had a particularly strong bond with Stitman; she tried a "substitute mentor" for him, but indicated that it was "not working too well." She testified that if Stitman went to jail for more than four and a half years, the child probably would not be able to see his father again (apparently the grandparents that are caring for him indicate that they will not take him to see Stitman) and that the separation from his father will be extremely detrimental for him.

On appeal, Stitman complains that the sentencing judge did not indicate on the record whether she felt obligated to follow the Sentencing Guidelines such "that she was free to disregard Stitman's appeal for judicial clemency on behalf of his son." Furthermore, Stitman argues that the fact that the district court "impose[d] a

sentence at the bottom end of the applicable guideline range, [ ] is indicative that she felt constrained by the interpretation of the guidelines."

In *United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1046 (7th Cir. 2005), this court laid out the procedures that sentencing courts must follow in imposing a sentence post-*Booker*. First, the sentencing court must calculate the applicable Guidelines range, even though the Guidelines are now advisory. See *United States v. Alburay*, 415 F.3d 782, 786 ("[T]he guidelines must still be consulted and taken into account when sentencing."). In addition, the court must give the defendant the "opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence," which Stitman attempted to do by making a rather passionate argument about the effect his imprisonment would have on his minor child. *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005). Additionally, in entering the sentence, the judge must consider the sentencing factors in § 3553(a), see *United States v. Re*, 419 F.3d 582, 583 (7th Cir. 2005), and "articulate the factors that determined the sentence that he has decided to impose," *Dean*, 414 F.3d at 729.

We are satisfied that the district court followed these procedures. First, she properly calculated the applicable Guidelines range. Second, she gave Stitman the opportunity to present his mitigating circumstances. The sentencing transcript reveals that Stitman's relationship with his son was discussed extensively at the hearing—not only by the attorneys and Reasonover, but by Stitman himself. Additionally, the sentencing judge considered Stitman's relationship with his son in calculating his sentence and imposing a sentence at the low end of the Guidelines range. In response to Stitman's argument that his sentence should be even shorter so that he could spend time with his son, the judge indicated that if she were "to

reduce Mr. Stitman's sentence for some period of time, it still isn't the case that [she] could send Mr. Stitman home to his son." This statement illustrates that the judge understood that she had the authority to impose a sentence lower than the minimum Guidelines sentence. Additionally, the judge observed that "[w]hen [Stitman] had every opportunity to forge a relationship and be a father, he was instead . . . into drugs with the mom." While sympathetic to Stitman's relationship with his son, the district court ultimately determined that "the problems that [your son] is facing right now are, in part, the result of your own conduct."

The sentence that the district court chose was a reasonable one, and we have no doubt that the judge understood her discretion to take the full range of the § 3553 factors into account. Finding no error in either the Guidelines calculations that produced Stitman's advisory range or the district court's ultimate decision, we AFFIRM the judgment.

A true Copy:

      Teste:

                              _____
                              *Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—1-10-07