JONES, Circuit Judge,
concurring in part and dissenting in part:
Although I am pleased to concur in the bulk of this Medicare fraud appeal, I differ with the panel majority’s interpretation of the term “victim” for sentencing enhancement purposes. The majority has embraced an unprecedented and grammatically inexplicable use of the term to, in effect, double count the loss attributable to this unsavory fraudulent patient care operation. The government has commendably stepped up its prosecution of flagrant Medicare and Medicaid frauds, but never have I seen this double counting of the “loss” to include not only the United States taxpayers who support Medicare payments but also the “patients,” who paid not a dime, may not have even received treatment, and in a number of cases were co-conspirators paid to lend their names to the treatment center’s fictitious files. Defendants have a right to be sentenced according to the plain meaning of the guidelines, not the government’s here-concocted abuse of terms. I respectfully dissent.
The defendants here received a six-level sentencing enhancement upon the district court’s finding that the 429 Medicare beneficiaries who visited defendants’ fraudulent clinic were “victims” under the United States Sentencing Guidelines. (There was already an enhancement for the loss to the United States Treasury.) The majority’s opinion tersely affirms the enhancement.[1]1 would vacate the defendants’ sentences and remand for resentencing because the Guidelines and relevant Commentary are inapplicable under both the plain meaning of the term “victims” and the purpose of its 2009 definition.
By way of background, “Victim” is not defined in the loss section of the Guidelines, § 2B1.1, but Note 1 (here inapplicable) and Note 4 of the Commentary define *169 the term. Note 4(E) provides in relevant part:
For purposes of subsection (b)(2), in a case involving means of identification “victim” means (i) any victim as defined in Application Note 1; or (ii) any individual whose means of identification was used unlawfully or without authority.[2]
The government argues that since the use of the 429 alleged beneficiaries’ Medicare identification information was part of an unlawful conspiracy, the enhancement was proper. The defendants contend, however, that the beneficiaries were participants in the Clinic’s kickback scheme rather than victims, and that the 2009 iteration of the Sentencing Guidelines was not intended to treat these beneficiaries as victims.
Guidelines Commentary “that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.” Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). “Application notes are given controlling weight so long as they are not plainly erroneous or inconsistent with the guidelines.” United States v. Rodriguez-Parra, 581 F.3d 227, 229 n.3 (5th Cir. 2009) (citing United States v. Urias-Escobar, 281 F.3d 165,167 (5th Cir. 2002)).
In my view, the government’s reading of the Guidelines is plainly erroneous for two reasons. First, that interpretation is inconsistent with the plain meaning of the term “victim.” A victim is a “person who suffers from a destructive or injurious action or agency.” “Victim,” The Random House Dictionary of the English Language (1966). See also “Victim,” Merriam-Webster’s Dictionary of the English Language, http://www.merriam-webster.com/ dictionary/victim, accessed Oct. 26, 2016 (“a person who has been attacked, injured, robbed, or killed by someone else”). The government, which bore the burden of proof for sentencing purposes, did not establish that any of the 429 purported patients were victims in this definitional sense. On the contrary, as the majority opinion states, “At trial, several of the clinic’s patients testified they went to the clinic because they were paid to do so and some never received any medical services.” Consequently, at least some of the 429 alleged beneficiaries could have been considered co-conspirators. Applying the application of the term “victims” here verges on the Orwellian.
Second, the majority’s interpretation is inconsistent with the purpose of the Guideline’s definition of victims. The Guidelines were updated as part of Amendment 726 to the Identity Theft Enforcement and Restitution Act of 2008.[3] The Sentencing Commission explained its reasoning for proposing the amendment that was adopted to create Application Note 4(E): to address more fully the actual harm done by identity theft.[4] Several circuits’ interpretation of the pre-2009 Guidelines had broadened the definition of victims to those “individuals who suffered considerably more than a small out-of-pocket loss and were not immediately reimbursed by any third party,” even if they were later reimbursed.[5] Other circuit precedent held *170 that victims were only those who suffered pecuniary loss from identity theft but were not reimbursed at all.[6] Amendment 726 was intended to resolve this circuit split.[7] Under the 2009 Guidelines, while a victim of identity theft may be reimbursed by a third-party or bank, the Commission explained that “such an individual [victim], even if fully reimbursed, must often spend significant time resolving credit problems and related issues, and such lost time may not be adequately accounted for in the loss calculations under the guidelines.”[8] According to the Commission, this hassle and lost time justified considering as a victim for sentencing purposes anyone whose identity was stolen. Therefore, the purpose for the definition of victims under Note 4(E) is to capture by an enhancement harms otherwise difficult to measure. This purpose is entirely consistent with the plain meaning of “victim” in the English language.
This purpose is not fulfilled by applying the definition of victims in this case. The government has not established that the 429 Medicare claimants had to spend “significant time,” or any time at all, resolving credit or related issues. Even real Medicare beneficiaries are not normally victims of Medicare fraud because Medicare, not the patient, pays the billing provider directly. The real victim is the U.S. taxpayer, through Medicare, and that has been accounted for by the guidelines in this case. There is no proof at all that the purported beneficiaries in this case suffered any harm, pecuniary or otherwise; they cannot be considered victims under Note 4(E).
I respectfully dissent from this portion of the majority opinion.

. The full treatment of the issue in the per curiam opinion is as follows: "Defendants argue that the district court erred in concluding the 429 patients or Medicare beneficiaries for whom the conspirators falsely claimed benefits were ‘victims’ under the guidelines. We agree with the government that Application Note 4(E) of U.S.S.G. § 2B1.1 defines 'victim' in a way that encompasses the Medicare beneficiaries because it includes ‘any individual whose means of identification was used unlawfully or without authority.' The district court did not err in applying this enhancement.”

. U.S.S.G. § 2B.1.1(b)(2)(C), Note 4(E) Cases Involving Means of Identification.

. U.S.S.G. App’x C, Vol. Ill, Am. 726, p. 308

. Office of General Counsel, Victim Primer (§ 2B1.1(b)(2))!, U.S. Sentencing Commission (2013), at 6.

.United States v. Lee, 427 F.3d 881, 895 (11th Cir. 2005) (internal quotation marks omitted). See also United States v. Stepanian, 570 F.3d 51 (1st Cir. 2009); United States v. Abiodun, 536 F.3d 162 (2d Cir, 2008); United States v. Panice, 598 F.3d 426 (7th Cir. 2010); United States v. Pham, 545 F.3d 712 (9th Cir. 2008).

.United States v. Yagar, 404 F.3d 967 (6th Cir. 2005). See also United States v. Kennedy, 554 F.3d 415 (3d Cir. 2009); United States v. Conner, 537 F.3d 480 (5th Cir. 2008); and United States v. Icaza, 492 F.3d 967 (8th Cir. 2007).

. Victim Primer (§ 2B1.1(b)(2)) at 8.

. USSG § 2B1.1, comment, (n.4); USSG App. C, amend. 726 (eff. Nov. 1, 2009).