# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 23, 2013

No. 12-10630

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

CRYSTAL DENISE MOORE,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, DENNIS, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

Defendant–Appellant Crystal Denise Moore ("Moore") appeals her sentence for a conspiracy that involved, *inter alia*, theft of United States Postal Service ("Postal Service") mail from a "collection box." She contends that the district court erred in calculating her offense level. Moore's appeal presents an interpretation issue of first impression regarding Application Note 4(C)(ii)(I) to Guideline § 2B1.1 ("the Note" or "sub-sub-paragraph I"). We hold that the Note permits the district court to *presume* that there were at least 50 victims when calculating an offense level in a case that involves one or more Postal Service receptacles; absent probative evidence that the actual number of victims exceeded 50, however, the court may not *presume* more than 50, irrespective of

No. 12-10630

the number of such receptacles that were involved.  Accordingly, we vacate and remand for resentencing.

## I.  Facts & Proceedings

Moore pleaded guilty to one count for her role in a sophisticated conspiracy to steal mail, harvest identifying information, and cash forged paychecks.  It is undisputed that Moore's co-conspirators stole mail from six Postal Service "collection boxes."  Based on that number of collection boxes, and for reasons explained at greater length below, the probation office's presentence investigation report ("PSR") presumed 50 victims *per collection box*—for a total of 300 victims—and  recommended a 6-level enhancement to Moore's offense level. Moore objected to the PSR, urging that the probation office misinterpreted the Note and that she should receive only a 4-level enhancement.  The district court overruled Moore's objection and sentenced her based on the PSR's Guidelines range determined on the basis of the 6-level enhancement.  Moore timely filed a notice of appeal.

## II.  Analysis

We review *de novo* the district court's interpretation of the Sentencing Guidelines and Application Notes, applying ordinary rules of statutory construction.[1]  "When the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result."[2] The Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."[3]

---

[1] *United States v. Serfass*, 684 F.3d 548, 550-51 (5th Cir. 2012).

[2] *Id.* at 551.

[3] *United States v. Diaz-Corado*, 648 F.3d 290, 292 (5th Cir. 2011) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)) (internal quotation marks omitted).

No. 12-10630

Moore's offense level was calculated pursuant to § 2B1.1, which applies an enhancement based on the number of victims: 4 levels if the offense involved 50 or more victims but less than 250, and 6 levels if it involved 250 or more victims.[4]  When mail is unlawfully taken, each intended recipient of that mail is deemed to be a victim.[5]

Application Note 4 to § 2B1.1 contains special rules for determining the number of victims based on the particular type of receptacle or receptacles from which the mail is stolen:

> (ii)    Special Rule.—A case described in subdivision (C)(i) of this note that involved—
>
> (I)    a United States Postal Service relay box, collection box, delivery vehicle, satchel, or cart, shall be considered to have involved at least 50 victims.
>
> (II)    a housing unit cluster box or any similar receptacle that contains multiple mailboxes, whether such receptacle is owned by the United States Postal Service or otherwise owned, shall, unless proven otherwise, be presumed to have involved the number of victims corresponding to the number of mailboxes in each cluster box or similar receptacle.[6]

Notably, sub-sub-paragraph I covers various types of receptacles owned exclusively by the Postal Service, so any mail stolen from such a receptacle was still in the Postal Service's custody and control.  Thus, none of that mail had been sorted by addressee, much less delivered to the addressee, before it was stolen.  By contrast, sub-sub-paragraph II covers "cluster boxes" and other receptacles that comprise multiple individual mailboxes: Cluster boxes might

---

[4] U.S.S.G. § 2B1.1(b)(2)(B), (C).

[5] *Id.* at cmt. n.4(C)(i).

[6] *Id.* at cmt. n.4(C)(ii).

belong to the Postal Service *but might also* (and most frequently do) belong to private parties or entities, such as office buildings or apartment complexes. Important to today's issue, each separate *mailbox* within a *cluster* has already been assigned to an individual mail addressee: Once mail is placed in a mailbox within a cluster, that mail is no longer in the custody of the Postal Service; it has been sorted and delivered to the individual owner or assignee of that particular mailbox. This is why sub-sub-paragraph II need not presume an *arbitrary* number of victims (such as sub-sub-paragraph I does with 50), but proceeds directly (1) to determine the actual number of boxes in the cluster and then (2) to count each box's assignee as one victim.

Moore's appeal requires us to interpret the Note when, as here, mail is stolen from *more than one* of the Postal Service's own *collection boxes* under the provisions in sub-sub-paragraph I—but not its or anyone else's "cluster" boxes under II. The probation office simplistically—and mistakenly—reasoned that, if taking mail from one collection box is presumed to produce at least 50 victims, then at least 300 victims are presumed to exist when mail is taken from six such boxes. Consequently, the PSR recommended the 6-level enhancement that results under § 2B1.1(b)(2)(C) when the offense involves 250 victims or more.

Moore countered that nothing in sub-sub-paragraph I authorizes presuming an additional 50 victims for each additional collection box. She reasons that, in the absence of any proof of the actual number of victims, only 50 victims could be presumed, ergo she should have received only the 4-level enhancement.

The parties could not find any case on point from any jurisdiction, and our own research confirms that vacuum. Given that lack of precedent, we understand the district court's reliance on the probation office's interpretation of the Note, which, at first glance, might seem plausible. Our *de novo* review nevertheless leads us to the conclusion that, under the plain language of the

No. 12-10630

Note, the number of collection boxes in excess of one does not increase the presumed number of victims beyond 50.  This plain reading is confirmed by a comparison to parallel provisions and does not produce an absurd result.

We begin, as we must, with the plain language of the special rule in sub-sub-paragraph I: "A case [in which undelivered mail was taken] that involved . . . a United States Postal Service . . . collection box . . . shall be considered to have involved at least 50 victims."[7]  Parsing this language carefully, we first note that, if the case involved a collection box, it is the *case* itself, not the collection box or boxes, that is presumed to have involved at least 50 victims; the *collection box* itself does not have victims.  And, whether the case involved a collection box is a straightforward, yes-or-no question: Either it involved such a box or it did not.  Neither the question thus posed nor its answer changes if the *case* involved two boxes, or six boxes, or a box, a satchel, and a truck: The case itself still involved one of the rule's named receptacles.

The probation office went astray by overlooking the introductory language in 4(C)(ii) and jumping straight to sub-sub-paragraph I.  The probation office thus read only that a "collection box . . . shall be considered to have involved at least 50 victims," which narrow reading produced its flawed syllogism that, ergo, 50 more victims are presumed for each additional collection box.  Although the Sentencing Commission certainly could have chosen to draft the Note that way, it did not.

We see no basis in the plain language of the Note for adding 50 presumed victims for each additional Postal Service receptacle.  Accordingly, the *presumption* created by the Note is for at least 50 victims, but no more than 50, regardless of the number of such receptacles involved.  Some credible proof is required to go beyond the presumption and find that there were in fact more

---

[7] *Id.* at cmt. n.4(C)(ii)(I).

than 50 victims.[8]  Here, apart from the Note's presumption, the record contains no independent evidence that 250 (or more) victims were actually involved. Therefore, only the 4-level § 2B1.1(b)(2)(B) enhancement was applicable.[9]

As noted above, this plain reading of sub-sub-paragraph I is confirmed by comparing it to the companion provision in sub-sub-paragraph II, which governs "housing unit cluster" boxes: "A case . . . that involved . . . a housing unit cluster box . . . shall, unless proven otherwise, be presumed to have involved the number of victims corresponding to the number of mailboxes in *each* cluster box."[10]  Sub-sub-paragraphs I and II both begin with "[a] case . . . that involved," but that phrase is followed in each sub-sub-paragraph by its own list of expressly identified and distinctly different types of mail receptacles—and each provision directs the sentencing court to draw a different presumption regarding the number of victims.  Based on these differences, if the case involved collection boxes, whether one or many, then under sub-sub-paragraph I the number of presumed victims is fixed at 50.  Under sub-sub-paragraph II, by contrast, the *total number of victims* presumed corresponds precisely to the *total number* of receptacles in *each* of the "clusters" involved.  A "collection box" is a single Postal Service receptacle; a "cluster box" is, by definition, a hive of multiple, separate receptacles, each of which is assigned to an individual mail addressee for the purpose of receiving mail *delivered* from the Postal Service to that addressee—each of whom is a separate, easily counted "victim."

---

[8] The dissent urges that the plain language of the Note "does not foreclose increasing the number of victims" if more than one receptacle is involved.  Although the Note does not foreclose *proof* of additional victims, it does not allow the court to *presume* that additional victims exist.

[9] Because the Application Note is unambiguous, we need not apply the rule of lenity in Moore's favor.  *See Serfass*, 684 F.3d at 551.

[10] U.S.S.G. § 2B1.1 at cmt. n.4(C)(ii)(II) (emphasis added).

No. 12-10630

Sub-sub-paragraph II confirms that the Sentencing Commission knows precisely how to link the number of presumed victims in a case to the number of mail receptacles involved when it wants to by expressly counting "each . . . box." The Commission did just that in sub-sub-paragraph II for "cluster" boxes. But, in writing sub-sub-paragraph I, the Commission could not—and therefore did not—link the presumed number of victims to the number of *collection* boxes. When we apply the venerable interpretation canon of *expressio unius est exclusio alterius*, we are further convinced that the Commission's choice of language—and the distinction that it produces between the two provisions—was intentional.[11] The incongruity between the Commission's treatment of *collection* boxes and its treatment of *cluster* boxes results from the Commission's deliberate and logical choice.[12]

Contrary to the assertions of government and the dissent, this does not produce an absurd result. Rather, the special rule in the Note produces a reasonable solution to the enigmatic problem of fixing the number of victims when undelivered mail is taken from a given type of receptacle. For "collection boxes," a one-size-fits-all presumption of 50 victims avoids the compounded uncertainty of "guesstimating" (1) the number of the pieces of mail (2) intended for an unknowable number of different addressees (3) that were taken from any of a number receptacles (4) which vary greatly in size and capacity. Indeed, we can only begin to imagine the troubling outcomes that might result if the government's interpretation were credited and each receptacle added an additional 50 presumed victims. For example, a defendant who took mail from

---

[11] *See, e.g.*, *Serfass*, 684 F.3d at 552.

[12] The dissent purports to see "symmetry" between sub-sub-paragraphs I and II that simply does not exist and that is not supported by the plain language of those provisions. As discussed below, "collection boxes" are physically and functionally different from "cluster boxes," which difference is reflected in the distinctive structures of the different rules.

five shoulder satchels carried by postal workers would be presumed to have 250 victims and receive the 6-level enhancement, but another defendant who took every bit of mail from one Postal Service truck would receive only the 4-level enhancement, despite the fact that a Postal Service truck would likely contain much more mail than the five satchels. That would truly be an absurd result.

Although the Commission's arbitrary 50-victim presumption might either overstate or understate the actual number of victims in any given case, a single, across-the-board presumption reduces the burden on the probation office and results in consistent application of the 4-level enhancement for the number of victims under § 2B1.1(b)(2)(B) in cases that involve theft of mail from the Postal Service's delivery system. And, by setting a floor rather than a ceiling for the number of *presumed* victims, the Note still leaves the door open to *proof* of additional victims when and if such proof is available. This solution to an evidentiary problem strikes us as both logical and practical, and anything but productive of an absurd result.[13]

Finally, both parties cite the history of the special rules embodied in sub-sub-paragraphs I and II and the Sentencing Commission's stated reasons for adopting them. As our analysis begins and ends with the unambiguous plain language of the Note, although, we need not, and therefore do not, consider those sources.[14] We nevertheless observe in passing that the Commission's stated reasons satisfactorily explain the existence of different rules for different kinds of mail receptacles. When the Commission promulgated sub-sub-paragraph I,

---

[13] Certainly, the Commission could have taken a different approach, but the mere existence of reasonable alternatives in no way requires us to conclude that the solution actually adopted is absurd. And there is nothing absurd about a rule that only partially relieves the government of its burden of proof at sentencing. *See United States v. Teuschler*, 689 F.3d 397, 399 (5th Cir. 2012) ("The Government bears the burden of proving by a preponderance of the relevant and reliable evidence that the facts support a sentencing enhancement.")

[14] *Serfass*, 684 F.3d at 551.

it explained that the special rule was necessary because of "the unique proof problems often attendant to such offenses."[15] That problem is self-evident: When a collection box (or truck or satchel) is involved, no characteristic of the receptacle itself indicates the number of putative victims who were intended to receive the mail inside that receptacle. Presuming at least 50 victims is an arbitrary but reasonable way to cope with that inherent uncertainty.

Several years later, when it added sub-sub-paragraph II to address cluster boxes, the Commission was more specific in citing "unique proof problems in that once entry is gained to such a cluster box and mail is removed, it is difficult to determine the number of persons from whom mail was stolen."[16] Cluster boxes differ from collection boxes; the number of individual boxes in a cluster assigned to different addressees allows a more case-specific determination of the number of victims, at a minimal burden on the probation office.

These somewhat different "proof problems" help to explain the Sentencing Commission's creation of different rules in sub-sub-paragraphs I and II.[17] But, to reiterate, we base our holding on the unambiguous wording of the Note, not on what we speculate the Sentencing Commission might have been trying to achieve.

In sum, we conclude that the plain language of Application Note 4(C)(ii)(I) specifies a *presumption* of at least 50 victims in a *case* that involves any number—whether one or more—of the specific types of Postal Service receptacles listed in that note. Proof of more than 50 victims is permitted, but the Note does

---

[15] II *U.S. Sentencing Guidelines Manual* app. C., at 173 (2003).

[16] III *U.S. Sentencing Guidelines Manual* app. C, at 133 (2011).

[17] Indeed, if the Commission—when drafting sub-sub-paragraph II years after it adopted sub-sub-paragraph I—had meant for the same presumption to apply to cluster boxes as the one applicable to collection boxes and the other types of receptacles listed in sub-sub-paragraph I, it could have (and presumably would have) simply amended sub-sub-paragraph I by adding "cluster boxes" to the list.

No. 12-10630

not authorize the *presumption* of more. The district court's understandable error was in relying on the PSR's erroneous multiplication of the number of victims by the number of collection boxes involved. On this record, Moore should have received only the 4-level § 2B1.1(b)(2)(B) enhancement applicable to cases involving at least 50 victims but not 250 or more.

### III.  Conclusion

We VACATE Moore's sentence and REMAND for resentencing consistent with this opinion.

No. 12-10630

OWEN, Circuit Judge, dissenting:

I would affirm Moore's sentence and hold that the district court correctly construed the sentencing guidelines when it determined that Moore's crime involved at least 300 victims. The district court did not err in applying the corresponding 6-level enhancement. The majority opinion's reading of Application Note 4(C) to § 2B1.1 is not supported by the language of that Note and leads to absurd results.

## I

Moore pled guilty to and was convicted of making, possessing, and uttering a forged and counterfeit security. The district court found that Moore and her co-defendants caused an actual loss of $91,332.22, and intended a loss of $115,884.74 as a result of a scheme that spanned more than a year and involved the theft of mail. The district court calculated the advisory sentencing guidelines range of imprisonment to be 70 to 87 months and sentenced Moore to 63 months of imprisonment, three years of supervised release, and $91,332.22 in restitution.

The relevant facts are undisputed: Moore admits that mail was stolen from at least six United States Post Office collection boxes on different dates in different locations.[1] She contends that the district court erred in its

---

[1] Moore's brief concedes that "thefts occurred during the following times," and sets forth the following description of seven thefts:

Arlington PO which occurred in April 2010
Oakwood PO which occurred in September 2010
Alta Mesa PO which occurred in November 2010
Handley PO which occurred in January 2011
Trinity PO which occurred in May 2011
8th A venue [sic] PO which occurred in June 2011
7th Street PO which occurred in July 2011.

11

No. 12-10630

interpretation of Application Note 4(C)(ii) when the court concluded that each mailbox "shall be considered to have involved at least 50 victims"[2] and calculated the number of victims to be 300.

The plain language of the Guidelines contemplates this calculation.[3] Application Note 4(C)(ii)(I) provides a special rule for determining the number of victims in a case involving United States Postal Service receptacles, including collection boxes:

> (C)  Undelivered United States Mail.—
>> (i)    In General.—In a case in which undelivered United States mail was taken, or the taking of such item was an object of the offense, or in a case in which the stolen property received, transported, transferred, transmitted, or possessed was undelivered United States mail, "victim" means (I) any victim as defined in Application Note 1; or (II) any person who was the intended recipient, or addressee, of the undelivered United States mail.
>>
>> (ii)   Special Rule.—A case described in subdivision (C)(i) of this note that involved—
>>
>>> (I)  A United States Postal Service relay box, collection box, delivery vehicle, satchel, or cart, shall be considered to have involved at least 50 victims.
>>>
>>> (II)  A housing unit cluster box or any similar receptacle that contains multiple mailboxes, whether such receptacle is

---

[2] U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n.4(C)(ii)(I) (2011).

[3] *United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012) ("When the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result.").

No. 12-10630

> owned by the United States Postal Service
> or otherwise owned, shall, unless proven
> otherwise, be presumed to have involved
> the number of victims corresponding to the
> number of mailboxes in each cluster box or
> similar receptacle.[4]

The district court reasoned that because Moore's offense involved six collection boxes, the Guidelines direct that each mailbox "shall be considered to have involved at least 50 victims."[5] This is the correct interpretation of the Guidelines. The Note says that "*a* [emphasis added] United States Postal Service . . . collection box . . . shall be considered to have involved at least 50 victims."[6] If "a . . . collection box" "shall be considered to have involved at least 50 victims,"[7] then six collection boxes are considered to have involved at least 300 victims (6 x 50). The majority opinion mistakenly focuses on the words "A case," reasoning that no more than 50 victims can be considered to have been involved in "A case" involving a mail collection box, regardless of the number of collection boxes or other receptacles involved in the case.

The majority opinion's construction of the Guidelines leads to patently absurd results. What if a case involved thefts from 51 mailboxes, or 75 mailboxes, or 100 mailboxes? The majority opinion says that the "at least 50 victims" phrase in subsection (I) of the Special Rule is a ceiling on the number

---

[4] U.S.S.G. § 2B1.1 cmt. n.4(C).

[5] *Id.*

[6] *Id.*

[7] *Id.*

13

No. 12-10630

of victims that can be "presumed," regardless of the number of collection boxes from which mail was stolen in a case. In a case involving 75 mailboxes, the Government must prove, according to the majority opinion, that at least one item of mail was in each mailbox beyond the 50th mailbox to exceed a 50-victim "presumption," and only the number of items of mail actually proven to have been in each mailbox will be used to establish the number of victims beyond 50 victims. This is not the intent of the Guidelines.

In amending the commentary to include the collection-box provision, the Commission explained its reasoning as follows:

> A special rule is provided for application of the victim enhancement for offenses involving United States mail because of (i) the unique proof problems often attendant to such offenses, (ii) the frequently significant, but difficult to quantify, non-monetary losses in such offenses, and (iii) the importance of maintaining the integrity of the United States mail.[8]

The Guidelines define a victim as "any person who was the intended recipient, or addressee, of the undelivered United States mail,"[9] and as the Commission recognizes, law enforcement will rarely, if ever, be able to identify all of the intended recipients affected by the theft of mail from a mail collection box or similar receptacle. The Commission therefore drafted Application Note 4 to say that if "a case" involved "a United States Postal Service relay box, collection box, delivery vehicle, satchel, or cart" the case "shall be considered to have involved at least 50 victims."[10] That language does not foreclose increasing the number

---

[8] U.S. SENTENCING GUIDELINES MANUAL app. C, vol. II, at 173 (2003).

[9] U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n.4(C)(i)(II) (2011).

[10] *Id.* § 2B1.1 cmt. n.4(C)(ii).

of victims that "a case" "shall be considered to have involved"[11] if that case involved more than "a" "relay box, collection box . . . ." If "a case" involved *more than one* of the identified mail receptacles or transporters, or it involved a combination of one or more of the receptacles or transporters enumerated in (C)(ii)(I), then the directive that "at least 50 victims" shall be considered to have been involved with respect to a receptacle or transporter requires multiplying the number of receptacles or transporters in "a case" by 50 to determine the number of victims "considered to have [been] involved."

The correct interpretation of this application note is all the more clear when its companion provision in subsection (II) regarding "a housing unit cluster box or any similar receptacle" is considered. Subsection (II) immediately follows the collection box section and the "shall be considered to have involved at least 50 victims" language. The cluster-box provision says:

> (II)  A housing unit cluster box or any similar receptacle that contains multiple mailboxes, whether such receptacle is owned by the United States Postal Service or otherwise owned, shall, unless proven otherwise, be presumed to have involved the number of victims corresponding to the number of mailboxes in each cluster box or similar receptacle.[12]

The number of victims is presumed to equal the number of individual mailboxes in the cluster. There is symmetry between subsection (I) and (II), when properly interpreted. A mailbox within a cluster box is for the use of an individual or a household. The receptacles or transporters described in (I) are used to collect or carry the mail for many individuals or households. The

---

[11] *Id.*

[12] *Id.* § 2B1.1 cmt. n.4(C)(ii)(II).

15

No. 12-10630

directive that each central mail collection box, such as the collection boxes at issue in this case, or that each delivery truck or mail satchel shall be considered to have at least 50 victims is entirely congruent with the treatment of unit cluster boxes. The majority opinion improperly places a constraint on the number of victims that can be presumed under subsection (I), ignoring the parallels between it and subsection (II).

The housing unit cluster-box provision was adopted in 2004, after the Commission had originally promulgated provisions dealing with collection boxes. In adopting the cluster-box provision, the Commission explained that "[t]he amendment provides a presumption that a theft from such a cluster box involves the number of victims corresponding to the number of mailboxes contained in the cluster box."[13] The Commission also explained that "[t]he same rationale for the original special rule applies to this expansion," and that rationale was:

> (i) unique proof problems in that once entry is gained to such a cluster box and mail is removed, it is difficult to determine the number of persons from whom mail was stolen; (ii) the frequently significant, but difficult to quantify, non-monetary losses; and (iii) the importance of maintaining the integrity of the United States mail service. These reasons are equally valid whether the mail receptacle is owned by the United States Postal Service or is privately owned.[14]

A scheme in which six cluster boxes were breached, with 50 individual mailboxes in each cluster, would have 300 presumed victims. Under the majority opinion's interpretation of the collection-box provision, however, a scheme—like the one in which Moore participated—in which six collection boxes

---

[13] U.S. SENTENCING GUIDELINES MANUAL app. C, vol. III, at 133 (2011).

[14] *Id.* (internal citation omitted).

No. 12-10630

were breached, would have a maximum of 50 presumed victims. Such disparate results cannot be reconciled with the Commission's identical rationale for adopting both provisions.

The majority opinion speculates that this disparity can be explained by the difference between cluster boxes and the receptacles listed in the collection-box provision, i.e., that "the number of individual boxes in a cluster . . . allows a more case-specific determination of the number of victims."[15] This explains why the number of victims per cluster is counted by individual boxes while the number of victims per collection box (or other receptacle) is counted by a predetermined amount, such as 50 victims per receptacle. It does not, however, account for the inconsistency between counting the number of individual mailboxes in *each cluster*, on the one hand, and setting a presumed number of victims that remains constant regardless of the total number of receptacles involved in the scheme, on the other. The majority opinion maintains that a presumption of "at least 50 victims" for a case involving more than one collection box "leaves the door open to *proof* of additional victims when and if such proof is available."[16] But, as the Commission noted, the very purpose behind adopting the directive in the application note is that such proof is all too often *not* available.

In a footnote, the majority opinion suggests that if the Commission "had meant for the same presumption to apply to cluster boxes as the one applicable to collection boxes . . . it could have (and presumably would have) simply amended sub-sub-paragraph I by adding 'cluster boxes' to the list."[17] But the

---

[15] *Ante* at 9.

[16] *Ante* at 8 (emphasis in original).

[17] *Ante* at 9 n.17.

17

No. 12-10630

Commission did not intend for "the same presumption to apply to cluster boxes as the one applicable to collections boxes." The majority opinion correctly explains that because there are an identifiable number of individual mailboxes within a housing unit cluster box or any similar receptacle that contains multiple mailboxes, a reasonable presumption may be made that the number of victims corresponds to the number of mailboxes. It would make no sense to treat a cluster box the same as a collection box and to deem that there were at least 50 victims involved with regard to a cluster. The cluster might contain ten mailboxes, or it might contain 200; but the number of mailboxes within a cluster would be readily ascertainable. There is no reason to choose "at least 50" as the number of victims that shall be considered to be involved with regard to a cluster box. There is a reason to choose "at least 50 victims" with regard to each collection box. At any given moment on any given day, the number of items of mail in a public mail receptacle such as a collection box can vary widely, and often, there is no means of proving how many addressees were victims of the theft. That is why the Commission did not "simply amend[]"[18] the Special Rule in the application note by adding "cluster boxes" to the list that contains collection boxes. The Commission determined that "at least 50 victims" was a reasonable number of victims to ascribe to the theft of mail from a public receptacle like a collection box when the number of victims is rarely ascertainable. There is no need for a directive like the one applicable to a collection box when a cluster box is involved. Apparently, the majority opinion and I agree that the Commission had a good reason for treating a collection box differently from a cluster box. We do disagree, however, as to how subsection

---

[18] *Id.*

18

(C)(ii)(I) is to be interpreted when "a case" involves theft from more than one collection box.

The majority opinion's strained reading of the Guidelines provides for the same enhancement even if the criminal scheme spanned months or years and involved breaches of hundreds of public collection boxes. This is not a reasonable reading of § 2B1.1 and its application notes.

* * *

I would affirm the district court's common-sense interpretation of the Guidelines. I therefore respectfully dissent.