NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

OCT 30 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-3429 |
| Plaintiff - Appellee, | D.C. No. 2:14-cr-00083-DJC-4 |
| v. | |
| RUSLAN KIRILYUK, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Daniel J. Calabretta, District Court, Presiding

Submitted October 22, 2025**
San Francisco, California

Before: CLIFTON, OWENS, and BUMATAY, Circuit Judges.
Dissent by Judge BUMATAY.

Ruslan Kirilyuk appeals from his 236-month sentence for wire fraud (18

U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), aggravated identity theft (18 U.S.C.

§ 1028A), and failure to appear (18 U.S.C. § 3146). As the parties are familiar

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

with the facts, we do not recount them here. We affirm.

The district court sentenced Kirilyuk according to § 2B1.1 of the then-operative 2023 Sentencing Guidelines. The Guidelines provided for graduated offense level enhancements based on the amount of "loss," but did not define "loss." U.S.S.G. § 2B1.1 (2023). Commentary to the Guidelines defined "loss" as the "greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A) (2023). Following this commentary, the district court used the $3.4 million intended loss in Kirilyuk's case, not the $1.4 million actual loss, to calculate his § 2B1.1 sentencing enhancement. Kirilyuk objected that, in his view, the district court erred because intended loss is an impermissible interpretation of "loss" under the Guidelines. Because the error was preserved below, we review this issue de novo. *United States v. Trumbull*, 114 F.4th 1114, 1117 (9th Cir. 2024).

"The Supreme Court has said that the commentary to the Guidelines 'is akin to an agency's interpretation of its own legislative rules.'" *Id*. (quoting *Stinson v. United States*, 508 U.S. 36, 45 (1993)). "As a result, we apply *Kisor v. Wilkie*, 588 U.S. 558 (2019), to determine whether to defer to the commentary's interpretation of a Guideline." *Id*. at 1117–18 (footnote omitted) (citing *United States v. Castillo*, 69 F.4th 648, 655–56 (9th Cir. 2023)).

The first step under *Kisor* is to ask whether the meaning of "loss" in U.S.S.G. § 2B1.1 is "genuinely ambiguous" after "exhaust[ing] all the 'traditional

tools of construction.'" *Castillo*, 69 F.4th at 655 (quoting *Kisor*, 588 U.S. at 575). If "loss" is unambiguous, a court should not defer to the commentary. *Id.* Kirilyuk argues that "loss" unambiguously refers only to actual loss. But we held otherwise in *United States v. Yafa*, 136 F.4th 1194 (9th Cir. 2025). There, we concluded that "because no single meaning of 'loss' is evident from § 2B1.1's text, even after employing the traditional tools of interpretation, a genuine ambiguity exists." *Yafa*, 136 F.4th at 1198.

Step two under *Kisor* requires asking whether the commentary's interpretation of the Guidelines is "reasonable," or whether it "come[s] within the zone of ambiguity the court has identified after employing all its interpretive tools." *Id.* (alteration in original) (quoting *Kisor*, 588 U.S. at 575–76). Text, structure, history, and purpose—the court's traditional interpretive tools—indicate that "intended loss" falls within the zone of ambiguity that *Yafa* identified.

Kirilyuk insists that the plain and ordinary meaning of "loss" includes only actual loss. But we have "often recognized 'intended loss' as part and parcel of the plain meaning of the term 'loss.'" *United States v. Hackett*, 123 F.4th 1005, 1012 (9th Cir. 2024) (canvassing Ninth Circuit precedent). *See also United States v. Diop*, No. 24-3774, 2025 WL 2602277, at *2 (9th Cir. Sept. 9, 2025) (concluding "'intended loss' is a permissible interpretation of 'loss.'").

This has also been the consistent position of the Sentencing Commission.

The Sentencing Guidelines for fraud were originally laid out in § 2F1.1, which set offense levels based on the "estimated, probable or intended loss." U.S.S.G. § 2F1.1(b)(1) (1987). In 2001, the provision for fraud was consolidated into the provision for theft, § 2B1.1, but nowhere did the Commission indicate an intent to change the longstanding understanding that loss, in fraud cases, could refer to intended or actual loss. *See* U.S.S.G. § 2B1.1 (2001). And in response to the disagreement among courts over whether the commentary definition of "loss" impermissibly expanded § 2B1.1, the Commission clarified its intent by moving the "loss" definition from the commentary into the Guidelines themselves. *See* U.S.S.G. § 2B1.1(b)(1)(A) (2024).

Other provisions of the Guidelines also indicate that "loss" may encompass "intended loss" as well as "actual loss." U.S.S.G. § 1B1.3(a)(3) describes the relevant sentencing factors as including not only "all harm that resulted from the [defendant's] acts and omissions" but also "all harm that was the object of such acts and omissions." In general, "the sentences of defendants convicted of federal offenses should reflect the nature and magnitude of the *loss caused or intended* by their crimes." U.S.S.G. § 2B1.1 cmt. background (2023) (emphasis added). This is because "loss serves as a measure of the seriousness of the offense and the defendant's relative culpability." *Id*. Kirilyuk's interpretation "would hamstring courts in fulfilling this purpose" by preventing them from adequately assessing a

defendant's culpability. *Yafa*, 136 F.4th at 1198. Thus, the commentary's treatment of "loss" as including "intended loss" is reasonable.

Step three under *Kisor* asks whether the Commission's interpretation is entitled "to 'controlling weight.'" *Trumbull*, 114 F.4th at 1118 (quoting *Kisor*, 588 U.S. at 576). *Kisor* instructs courts to assess "whether the interpretation (1) constitutes the agency's 'official position, rather than any more ad hoc statement not reflecting the agency's views,' (2) implicates the agency's 'substantive expertise,' and (3) reflects the agency's 'fair and considered judgment.'" *Yafa*, 136 F.4th at 1199 (quoting *Kisor*, 588 U.S. at 576–79).

In this case, the Commission's interpretation is entitled to controlling weight. We held in *Yafa* that "[t]he commentary is issued by the Commission as its official position." *Id.* Given the research and consideration the Commission gives to § 2B1.1 crimes, "the commentary implicates the Commission's substantive expertise and reflects its fair and considered judgment." *Id.* The interpretation of "loss" as including "intended loss" is longstanding and does not "reflect a 'convenient litigating position' or 'new interpretation . . . that creates "unfair surprise" to regulated parties.'" *Id.* (omission in original) (quoting *Kisor*, 588 U.S. at 579).

The commentary's interpretation of "loss" as "the greater of actual loss or intended loss" satisfies all three of the *Kisor* factors and is entitled to deference.

Therefore, the district court did not err when it sentenced Kirilyuk according to the

loss he intended to inflict.

**AFFIRMED.**

*United States of America v. Kirilyuk*, No. 24-3429
BUMATAY, Circuit Judge, dissenting:

The government maintains that we should defer to the United States Sentencing Commission's interpretation of "loss" as "the greater of actual or intended loss." The majority, applying *Kisor v. Wilkie*, 588 U.S. 558 (2019), agrees and affirms Ruslan Kirilyuk's sentence. But in my view, the Commission's interpretation is not a reasonable interpretation entitled to deference. So I respectfully dissent.

"[W]e apply *Kisor v. Wilkie*[] to determine whether to defer to the commentary's interpretation of a Guideline." *United States v. Trumbull*, 114 F.4th 1114, 1117–1118 (9th Cir. 2024) (simplified). We will not defer to the Commission's interpretation of a Sentencing Guideline if the interpretation is not a "reasonable" one. *Kisor*, 588 U.S. at 575–76 (simplified).

The Commission's interpretation is reasonable if it "come[s] within the zone of ambiguity the court has identified." *Id.* at 576. When making this determination, a court "employ[s] all its interpretive tools" to "at least establish the outer bounds of permissible interpretation." *Id.*; *see also United States v. Kirilyuk* (*Kirilyuk I*), 29 F.4th 1128, 1137 (9th Cir. 2022) ("In interpreting the Guidelines, we apply the ordinary tools of statutory interpretation[.]"). An agency's interpretation is not automatically reasonable. Instead, reasonability "is a requirement an agency can fail." *Kisor*, 588 U.S. at 576. The Commission fails this requirement.

1

Although "a review of dictionaries reveals that 'loss' can have a range of meanings[,]" *Kirilyuk I*, 29 F.4th at 1137, this range is not limitless. Instead, each of the context-specific meanings share a common denominator: they all refer to a diminution that *actually happened*. Take, for instance, a survey of the entries for "loss" in Black's Law Dictionary. These entries include "actual loss," "economic loss," "intangible loss," and "unrealized loss." *Loss, Black's Law Dictionary* (11th ed. 2019). Each of these entries, in turn, have their own definition. An "actual loss" refers to a term of art in insurance law, specifically the "real and substantial destruction of insured property." *Id.* An "economic loss" is a "monetary loss such as wages or lost profits." *Economic Loss, Black's Law Dictionary* (11th ed. 2019). "Intangible loss" is "damage caused by the disruption of an intangible right or benefit." And an "unrealized loss" is when an asset "has decreased in market value." *Loss, Black's Law Dictionary* (11th ed. 2019).

This cursory survey reveals what common sense suggests: when "ordinary speakers of the English language say 'loss,' they mean something that actually occurred." *United States v. Boler*, 115 F.4th 316, 333 (4th Cir. 2024) (Quattlebaum, J., dissenting). When insured property is destroyed, the destruction truly occurs. Similarly, if an investor holds $100 worth of stock, and that stock decreases in value to $80, the investor has suffered an unrealized loss of $20. That the stock's value may increase to $150 the very next day does not negate that the stock *actually*

2

*decreased in value* the day before. Even if the investor sells the stock when it is valued at $150 and realizes a gain of $50, she still experienced an actual diminution in value when the stock value fell to $80. So even an unrealized loss involves a diminution that truly occurs.

The Guidelines' structure and context do not change this analysis. The majority, for example, cites § 1B1.3 as structural evidence for its view that "intended loss" is a permissible interpretation of "loss." But that's wrong. Section 1B1.3 requires that "[u]nless otherwise specified," both the harm that "resulted from" an offense and the harm that "was the object of" the offense help determine specific offense characteristics. But this section does not expand the permissible range of interpretations for the term "loss." Instead, it offers general application principles for the entire Sentencing Guidelines. *See* U.S.S.G. Part B ("General Application Principles"). Some of the federal offenses in the guidelines are strictly inchoate offenses. *See, e.g.*, U.S.S.G. § 2.X.1.1 ("Other Offenses: Conspiracy, Attempt, Solicitation"). So, of course, the specific offense characteristics for those offenses must be based on the harm that "was the object of" the offense. But § 2B1.1 deals with economic and property offenses. And in the context of an economic or property loss, even an unrealized one, the term "loss" is ordinarily used to convey "an event or state of being that has *actually* happened." *Boler*, 115 F.4th at 330 (Quattlebaum, J., dissenting).

3

A loss can be tangible or intangible, realized or unrealized. But no reasonable user of the English language, in my view, would use the term "loss" to refer to something that never happened. A reasonable interpretation of "loss" must describe something that actually happened. Because an "intended loss" never happened, it is not a reasonable agency interpretation.

We do not defer to unreasonable agency interpretations. *See Kisor*, 588 U.S. at 575–76 (simplified). And we should not have done so here. I respectfully dissent.