In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-1204

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUNAID GULZAR,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:22-cr-00018 — **Robert L. Miller, Jr.**, *Judge*.

ARGUED DECEMBER 13, 2023 — DECIDED FEBRUARY 9, 2024

Before WOOD, KIRSCH, and LEE, *Circuit Judges*.

PER CURIAM. Junaid Gulzar was convicted of wire fraud and sentenced to a below-Sentencing Guidelines term of 18 months' imprisonment. Central to the Guidelines calculations was the determination of the amount of the victim's "loss." A fraud defendant's offense level is increased under U.S.S.G. § 2B1.1(b)(1) if the "loss" amount exceeds $6,500. At issue is when the loss should be measured. The district court, relying on the Guidelines commentary, determined that the

victim's loss here should be measured at the time she detected the loss. Because the district court was correct to defer to the Guidelines commentary, we affirm.

I

In 2021, Junaid Gulzar convinced Ariana Small, a childhood friend, to invest money in Indiana gas stations that he would own and operate. He persuaded her and her father-in-law to wire $310,000, and he promised her that he would invest the money and pay her back on fixed dates. But instead of investing the money, Gulzar wagered it at a Michigan casino.

Small soon suspected something had gone awry. Under their agreement, Gulzar owed her a certain amount by June 1, but he missed the deadline and fabricated excuses for the delay. On June 4, Small sent text messages to Gulzar accusing him of scamming her. Over the next several days, she repeated her demands for repayment and threatened to report him for bank fraud. On June 11, at Gulzar's request, Small drove from New York to Indiana to collect payment. That day, he handed her several checks but only $115,000 cleared the bank. On June 23, he wired her another $1,500.

Small took legal recourse to recoup her investment. She reported Gulzar to the police, and on July 2, she sued him in Indiana for fraud. At his deposition in that case three weeks later, Gulzar offered to repay Small and her family. The next day, he paid her $268,500—the entire outstanding amount plus $75,000 in profit.

In March 2022, Gulzar was charged with three counts of wire fraud under 18 U.S.C. § 1343. Six months later, a jury found him guilty of each count.

At sentencing, the parties disputed the appropriate loss amount. Fraud offenses carry a base offense level of 7 but are subject to an increase depending on the amount of "loss" caused by the defendant. U.S.S.G. § 2B1.1(a)(1) & (b)(1). Note 3(A) to § 2B1.1 clarifies that "loss" means either the greater of the victim's actual loss or intended loss. Actual loss means "the reasonably foreseeable pecuniary harm that resulted from the offense," § 2B1.1 cmt. n.3(A)(i); intended loss is "the pecuniary harm that the defendant purposely sought to inflict," *id.* cmt. n.3(A)(ii). The commentary further instructs that the loss amount should be reduced by the money returned to the victim before the crime was detected. *Id.* cmt. n.3(E)(i).

The district court considered three competing loss amounts, each corresponding to a different offense level. First, the probation officer who prepared the Presentence Investigation Report recommended a loss amount of $195,000—reflecting the full amount Small gave Gulzar, less what he repaid on June 11. This sum correlated with a 10-level increase (and a sentencing range of 24–30 months).

Second, the government proposed a loss amount of $310,000, covering the total amount that Gulzar fraudulently raised from Small. The government noted that there was an ambiguity about the timing when the victim's "loss" should be measured. A victim's losses may fluctuate at various times during the commission of the offense, and the Guidelines do not specify the moment in time at which the court should measure the loss amount. Although application note 3 to § 2B1.1 states that defendants should receive credit for any repayment before the scheme is detected, Gulzar had not repaid any money as of June 4—when Small detected the scheme.

The government, relying on the proviso in *Stinson v. United States*, 508 U.S. 36, 45 (1993), that the commentary should be given controlling weight if it is not plainly errone-ous or inconsistent with the Guidelines, argued that Gulzar intended for the victim to lose $310,000, corresponding to a 12-level increase (and sentencing range of 30–37 months).

Third, Gulzar argued, under *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), that deference to Guidelines commentary is not war-ranted unless the Guidelines are genuinely ambiguous. *Kisor* explains that courts—before consulting the commentary— should exhaust all the traditional tools of statutory interpre-tation, including analysis of the text, history, and purpose of the Guidelines. *Id.* at 2415–16. Gulzar insists that the plain-text meaning of loss is "actual loss" and that the earliest time to measure the loss is the date of indictment, reflecting the start of the criminal proceeding. By that time, Small already had profited from the scheme, so she had not suffered any actual loss. He argued for a sentencing range of 0–6 months.

The district court sided with the government, assessed the loss amount at $310,000, and applied a 12-level increase. The court characterized the meaning of "loss" in § 2B1.1 as ambig-uous but determined that the ambiguity was resolved through recourse to application note 3. Based on the Supreme Court's holding in *Stinson*, 508 U.S. at 45, the court deter-mined that application note 3 deserved controlling weight. *See id.*; *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016). The district court looked to the evidence submitted at trial about the timing of Small's detection that Gulzar had de-frauded her. The court identified the date of detection as June 4, when she accused him by text message of scamming her. By that date, Gulzar had not made any repayment. The

court assessed her loss at $310,000, which significantly increased Gulzar's offense level, leading to a sentencing range of 30–37 months. The court then sentenced him to 18 months. The court acknowledged the "unusual" nature of this fraud (in that the victim was repaid before the start of any criminal proceedings), but it deemed the fraud serious and highlighted Gulzar's repeated lies to carry it out.

## II

On appeal, Gulzar maintains that the district court erred by increasing his total offense level based on Small's loss at the time she detected his fraud. He argues that the court should have followed *Kisor* and exhausted all the traditional tools of statutory interpretation before deferring to Guidelines commentary. *See* 139 S. Ct. at 2415. He asks us to conclude that *Kisor* overruled the Supreme Court's earlier decision in *Stinson*, 508 U.S. at 45, an issue presently subject to a circuit split. We have yet to take a position. *United States v. States*, 72 F.4th 778, 791 n.12 (7th Cir. 2023).

We need not weigh in on this split because either approach would result in deferring to the Guidelines commentary here. Section 2B1.1 does not specify the time at which a victim's loss should be calculated, and no amount of statutory interpretation would resolve that ambiguity. We have previously relied on an earlier version of application note 3 to determine the time at which to calculate a victim's loss amount. *See United States v. Saunders*, 129 F.3d 925, 931 (7th Cir. 1997) (fraudulent bonds); *United States v. Mau*, 45 F.3d 212, 216 (7th Cir. 1995) (check kiting). Before resorting to the application note, a court would necessarily have determined that § 2B1.1 was ambiguous even if no opinion has expressly

stated as much. *See, e.g. Mau*, 45 F.3d at 216 (explaining origins of the application note and its relevance to fraud cases).

Gulzar next argues that the district court should have rejected the Guidelines commentary's time of detection and measured the victim's loss at the time of sentencing. He argues that any other time—including the time of detection—would be arbitrary because it lacks any grounding in the Guidelines.

Our case law offers several reasons to defer to the time-of-detection language in application note 3 to § 2B1.1. Payments to victims after a fraudulent scheme may reflect a desire to avoid punishment and not genuine remorse for wrongdoing. *See United States v. Philpot*, 733 F.3d 734, 749 (7th Cir. 2013). In addition, payment after the detection of fraud may indicate acceptance of responsibility but "does not change the fact of loss." *Id.* (quotation omitted); *United States v. Lane*, 323 F.3d 568, 589 (7th Cir. 2003) ("[T]he district court cannot reduce the amount of actual loss because the defendant, or any other party, makes restitution after the [fraudulent] scheme has been exposed."). And measuring actual loss at the time of sentencing, as Gulzar proposes, would lead to perverse incentives: A defendant could simply repay the victims in full that day to assure himself the lowest of the possible sentencing ranges. *See Saunders*, 129 F.3d at 931. Of course, a district court may consider a defendant's efforts to repay his victims, even after detection, under 18 U.S.C. § 3553(a) when fashioning a sentence. But we decline to adopt Gulzar's suggestion that a victim's loss should be measured at the time of sentencing to calculate the applicable sentencing range.

AFFIRMED